

## CSC

# Notice of Service of Process

RXT / ALL
Transmittal Number: 22487532
Date Processed: 12/24/2020

**Primary Contact:** Eric Manne
AIG Property Casualty
80 Pine St
Fl 13
New York, NY 10005-1734

| | |
|---|---|
| **Entity:** | National Union Fire Insurance Company of Pittsburgh, Pa. Entity ID Number  0085137 |
| **Entity Served:** | National Union Fire Insurance Company of Pittsburgh, PA |
| **Title of Action:** | Stillwater Mining Company vs. AIG Claims, Inc |
| **Matter Name/ID:** | Stillwater Mining Company vs. AIG Claims, Inc (10773875) |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Contract |
| **Court/Agency:** | Stillwater County District Court, MT |
| **Case/Reference No:** | DV 20-117 |
| **Jurisdiction Served:** | Montana |
| **Date Served on CSC:** | 12/23/2020 |
| **Answer or Appearance Due:** | 21 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | Martha Sheehy 406-252-2004 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674  (888) 690-2882  |  sop@cscglobal.com

12/22/2020

JOB

**5192438**   Rush   12/23/20   Job 5192438

Arghive   Edit

| CLIENT | SERVER | |
|---|---|---|
| Holland and Hart | Williams Investigations | Priority Rush   Edit |
| Sharon Stocker | Brian Mook | Status |
| 406-896-4611 | 406-459-3126 | Due   Dec 23, 2020 |

## Affidavits

*No Affidavit*

## Service Attempts

Field Sheet

*No Service Attempts*

## Uploads

Upload File

Complaint and Jury Demand
12/22/20, 3:44 pm   Edit   Docs to Be Served

Summons
12/22/20, 3:44 pm   Edit   Docs to Be Served

## Notes

*No Notes*

## Job Activity

12/22/20, 3:44 pm   Job Created   Emailed to: Server.   Kayla Brewer

**Recipient**   Edit

Name   ~~Corporation Service Company (A) for National Union Fire Insurance Company of Pittsburgh, PA~~

Company
26 W 6th Ave *
Helena, MT 59601

**Service Instructions**   Edit

I have a two additional Summons/Complaints that I need served. One in Helena and one in Missoula. See below for details on the process service in Helena.

1. National Union Fire Insurance Company of Pittsburgh, PA
c/o Registered Agent:
Corporation Service Company
26 West 6th Avenue
Helena, MT

As with the previous service requests, please attempt to serve the documents tomorrow, 12/23/2020.

A separate email will follow with information on the other process service for Missoula.

Heads up, we are attempting to identify one other registered agent for a company that needs to be served and I hope to have that information to you later today or tomorrow.

**Docs to Be Served**   Edit

Summons

Complaint and Jury Demand

**Court Case**   Edit

Case   DV 20-117
Plaintiff   Stillwater Mining Company
Defendant   AIG Claims, Inc; et al

Martha Sheehy
Sheehy Law Firm
P.O. Box 584
Billings, MT 59103-0584
Telephone: (406) 252-2004
Fax: (866) 252-2004
msheehy@sheehylawfirm.com

Kyle A. Gray
Holland & Hart LLP
401 North 31st Street
Suite 1500
P. O. Box 639
Billings, Montana 59103-0639
Telephone: (406) 252-2166
Fax: (406) 252-1669

ATTORNEYS FOR PLAINTIFF

## MONTANA TWENTY-SECOND JUDICIAL DISTRICT COURT
### STILLWATER COUNTY

| | |
|---|---|
| STILLWATER MINING COMPANY, | Cause No. DV 00-117 |
| Plaintiff, | Hon. Matthew Wald |
| v. | |
| AIG CLAIMS, INC.; NATIONAL UNION FIRE INSURANCE COMPANY Of PITTSBURGH, PA; ACE AMERICAN INSURANCE COMPANY, AND QBE INSURANCE CORPORATION, | **SUMMONS** |
| Defendants. | |

THE STATE OF MONTANA SENDS GREETINGS
TO THE ABOVE-NAMED DEFENDANT NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA.

You are hereby summoned to answer the Complaint in this action which is filed in the office of the Clerk of this Court, a copy of which is herewith served upon you and to file your answer and serve a copy thereof upon the plaintiff's attorney within twenty-one (21) days after the service of this Summons on you (or 42 days if you are the State of Montana, a state agency, or a state officer or employee), exclusive of the day of service; and in case of your failure to appear or answer, judgment will be taken against you by default, for the relief demanded in the Complaint.

WITNESS my hand and the seal of said Court this 21st day of December 2020.

SANDY FOX

CLERK OF DISTRICT COURT

(COURT SEAL)

By: _____

Deputy Clerk

Martha Sheehy
Sheehy Law Firm
P.O. Box 584
Billings, MT 59103-0584

Kyle A. Gray
Holland & Hart LLP
401 North 31st Street
Suite 1500
P. O. Box 639
Billings, Montana 59103-0639

ATTORNEYS FOR PLAINTIFF

2

Martha Sheehy
SHEEHY LAW FIRM
P. O. Box 584
Billings, Montana 59103-0584
Telephone: (406) 252-2004
Fax: (866) 477-5953
msheehy@sheehylawfirm.com

Kyle A. Gray
HOLLAND & HART LLP
401 N. 31st St., Suite 1500
Billings MT 59101
406-252-2166
kgray@hollandhart.com

Attorneys for Plaintiff

MONTANA TWENTY-SECOND JUDICIAL DISTRICT COURT
STILLWATER COUNTY

| | |
|---|---|
| STILLWATER MINING COMPANY, | Cause No. DV 00-117 |
| Plaintiff, | Hon. Matthew Wald |
| -vs- | |
| AIG CLAIMS, INC; NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA; ACE AMERICAN INSURANCE COMPANY; AND QBE INSURANCE CORPORATION, | **COMPLAINT AND JURY DEMAND** |
| Defendants. | |

-1-

COMES NOW Plaintiff Stillwater Mining Company, by and through its
counsel of record, Sheehy Law Firm, and for its Complaint states and alleges as
follows:

## I.  Parties and Venue

1.  Plaintiff Stillwater Mining Company ("Stillwater") is a mining company
    incorporated under Delaware law with its principal place of business in
    Stillwater County, Montana.  Stillwater is a wholly-owned subsidiary of
    Thor Holdco US Inc., a Delaware corporation, which is a wholly-owned
    subsidiary of Sibanye-Stillwater Limited, a South African corporation with
    its principal place of business in South Africa.

2.  On information and belief, Defendant AIG Claims, Inc. ("AIG") is
    incorporated under Delaware law and conducts business in all states,
    including Montana.  AIG Claims, Inc., is the authorized representative for
    National Union Fire Insurance Company of Pittsburgh, Pennsylvania, and
    the entity which handled and adjusted Stillwater's claim on behalf of
    National Union.

3.  On information and belief, Defendant National Union Fire Insurance
    Company of Pittsburgh, Pennsylvania ("National Union") is incorporated

under Pennsylvania law with its principal place of business in New York, and conducts insurance business in Montana through policies issued in this state.

4.      On information and belief, Defendant ACE American Insurance Company ("Chubb") is an insurance company incorporated under Pennsylvania law with its principal place of business in Pennsylvania and conducts insurance business in Montana through policies issued in this state.

5.      On information and belief, Defendant QBE Insurance Corporation ("QBE") is an insurance company incorporated under Pennsylvania law with its principal place of business in Wisconsin and conducts insurance business in Montana through policies issued in this state.

6.      Venue is appropriate pursuant to § 25-2-121, MCA.

7.      Venue is appropriate pursuant to § 25-2-122, MCA.

8.      This Court has personal jurisdiction over each Defendant because each of the Defendants is authorized to sell, write or adjust insurance in Montana, and provided policies of insurance to Stillwater, a business in Montana.

## II.   Factual Allegations

### A.   The Merger

9.      Each and every allegation contained above is incorporated by express

reference as though fully set forth here.

10. Stillwater is the only primary producer of platinum and palladium in the United States. Platinum and palladium are "critical minerals" according to the Department of Interior, and are essential to the production of catalytic converters, medical, and industrial applications.

11. Stillwater is the largest hard rock mining operation in Montana, contributing over $3 billion to Montana's gross domestic product annually and creating nearly 9,000 jobs in Montana.

12. Stillwater was incorporated in 1992 and was first publicly listed in 1994.

13. Stillwater was publicly traded from 1994 until 2017.

14. In 2017, Stillwater was acquired by and merged into an affiliate of Sibanye.

15. As a result of the 2017 merger ("the Merger"), Stillwater became a wholly owned subsidiary of Sibanye.

16. Stillwater remains a standalone company after the Merger.

17. The deal price for the Merger was $18.00 per share.

**B.    The Underlying Lawsuit**

18. Prior to the closing of the Merger, on or about April 20, 2017, Stillwater received appraisal demands from certain of its stockholders ("Underlying Petitioners") demanding appraisal of their shares of Stillwater stock under

Delaware law, 8 Del. C. § 262.

19.   Following closure of the Merger on May 14, 2017, the Underlying
      Petitioners filed multiple appraisal lawsuits in Delaware Chancery Court.

20.   The appraisal lawsuits were consolidated into the Appraisal Action
      captioned *In re Appraisal of Stillwater Mining Company,* C.A. No. 2017-
      385-JTL ("Underlying Lawsuit").

21.   In the Underlying Lawsuit, the Underlying Petitioners sought a
      determination of the fair value of their shares and an order that Stillwater pay
      that fair value, together with statutory interest.

22.   Throughout the Underlying Lawsuit, the Underlying Petitioners claimed that
      the Merger price was inadequate because Stillwater's Board and CEO
      breached their duties to obtain fair value, among other theories.  Petitioners
      asserted that, but for these breaches, they would have received the fair value
      of their shares of Stillwater's stock, which they claimed was $25.91 per share
      – more than 40% over the agreed merger price of $18/share.

23.   In August 2018, Stillwater settled the claim of certain Underlying Petitioners
      on 340,000 shares for $18/share plus 1.75 % interest.  Stillwater paid at least
      $120,000 of interest as part of this partial settlement ("the Settlement Interest
      Payment").

24.  In September 2018, Stillwater pre-paid the remaining Underlying Petitioners the last unaffected listed share price of $14.68 per share plus the statutory interest on that amount, which totaled $7,905,482.65 ("the Statutory Interest Payment").

25.  Trial was held in the Underlying Lawsuit from December 10, 2018 to December 13, 2018.

26.  The Chancery Court ruled in favor of Stillwater, determining that Petitioners failed to demonstrate a flawed and biased sale process, and that the Merger deal price of $18 per share reflected the fair value of the Underlying Petitioners' shares.

27.  Although Stillwater prevailed on the issue of the value of the shares, the Chancery Court determined that the Underlying Petitioners were entitled to punitive statutory interest on the appraised fair value of their shares accruing "at the statutory rate, compounded quarterly, from the Transaction Date until the date of payment ("Interest Award")."

28.  The Order imposed an effective interest rate of 7.921%.

29.  On September 27, 2019, the Court entered a Post-Trial Judgment ordering Stillwater to pay a judgment consisting of:

    1.  $18 per share less the prepayment of $14.68 per share, for a payment

of $3.32 per share; and

2.    The Interest Award reflecting the statutory interest rate on the unpaid

value of the shares from May 4, 2017 to September 30, 2019.

30.   Stillwater paid the Interest Award in the amount of $3,472,920.99 to

Petitioners.

31.   Underlying Petitioners appealed the award in the Delaware Supreme Court,

and the Delaware Supreme Court affirmed the trial court's decision.

32.   Stillwater incurred attorneys' fees and other costs defending the Underlying

Lawsuit which exceed the policy limits of the AIG / National Union policy

and the ACE policy.

C.    **Stillwater's D&O Policies.**

33.   The Defendants issued insurance policies to Stillwater providing primary or

excess directors' and officers' liability insurance coverage for claims made

during the policy period from May 1, 2016 to August 1, 2017.

34.   AIG issued primary policy no. 01-356-49-63 with an aggregate limit of $10

million above a self-insured retention of $1.5 million applicable to Securities

Claims (the "Primary Policy").

35.   The remaining Defendants issued excess policies as follows:

a.    ACE issued excess policy no. DOX G26811703 003 with an aggregate

limit of $10 million excess of $10 million; and

b.   QBE issued excess policy no. QPL0096237 with an aggregate limit of $10 million excess of $20 million.

36.   The ACE and QBE Policies are collectively referred to as "Excess Policies" and, together with the Primary Policy, the "D&O Policies." ACE and QBE are referred to as the "Excess Insurers."

37.   Except as otherwise expressly provided, the Excess Policies "follow form" to the terms and conditions of the Primary Policy, meaning that they adopt those terms and conditions as if fully set forth in their policy language.

38.   The limits of the D&O Policies specifically encompass and provide coverage for attorneys fees expended in the defense of a claim.  Defense costs erode the policy limits.

39.   Pursuant to the Insuring Agreement of the Primary Policy, the Defendants agreed to pay, on behalf of Stillwater, "Loss of any Organization: (1) arising from any Securities Claim made against such Organization for any Wrongful Act of such Organization . . . ." § 1c.

40.   Under the Primary Policy, the term "Organization" includes Stillwater. § 13 Definitions.

41.   The Primary Policy defines a "Securities Claim" to mean a "Claim":

(1)    alleging a violation of any law, rule or regulation, whether statutory or common law (including but not limited to the purchase or sale or offer or solicitation of an offer to purchase or sell securities), which is:

    (a)    brought by any person or entity alleging, arising out of, based upon or attributable to the purchase or sale or offer or solicitation of an offer to purchase or sell any securities of an Organization; or

    (b)    brought by a security holder or purchaser or seller of securities of an Organization with respect to such security holder's, purchaser's or seller of securities of an Organization with respect to such security holder's, purchaser's or seller's interest in securities of such Organization. . . .

Primary Policy, § 13 Definitions (Amended by Endorsement 12).

42.    The Primary Policy broadly defines "Wrongful Act" to include "with respect to an Organization, any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act by such Organization, but solely in regard to a Securities Claim." § 13 Definitions.

43.    "Loss" covered by the Primary Policy is also broadly defined to mean "damages, settlements, judgments (including pre/post-judgment interest on a covered judgment), [and] Defense Costs . . . ." § 13 Definitions.

44.    "Loss" with respect to Securities Claims also includes "punitive, exemplary and multiplied damages," which is "governed by such applicable law that most favors coverage for such penalties and punitive, exemplary and multiple damages." § 13 Definitions.

45.   Defense Costs are further defined in the Primary Policy to include

"reasonable and necessary fees, costs and expenses consented to by the

Insurer . . . resulting solely from: (1) the investigation, adjustment, defense

and/or appeal of a Claim against an Insured . . . ." § 13 Definitions.

**D.   Defendants' Wrongful Denials of Stillwater's Request for Defense and Indemnity.**

46.   Stillwater timely notified the Defendant of the appraisal demands on or about

April 25, 2017, and specifically requested that Defendants confirm approval

of Stillwater incurring defense costs.

47.   On May 23, 2017, AIG acknowledged receipt of proper notice of the claims.

48.   On June 1, 2017, AIG informed Stillwater's counsel that AIG would issue a

disclaimer, but did not send a written disclaimer.

49.   On November 4, 2019, Stillwater again requested payment of defense costs

and updated AIG as to the status of the Underlying Lawsuit.

50.   On November 12, 2019, AIG responded to Stillwater's demand and denied

any duty to defend or indemnify Stillwater based on the following analysis:

> The Appraisal Action is not a Claim alleging a violation of any law, rule or regulation and as such does not assert a Securities Claim. The Petitioners sought a judicial determination of the fair value of their shares.

Moreover, the Appraisal Action did not allege a Wrongful Act. Again, the Petitioners sought a judicial determination as to the fair value of their shares.

51.   The Excess insurers did not assert defenses and presented no basis for denying defense and indemnity.

**COUNT I- Breach of the Duty to Defend by AIG / National Union.**

52.   Each and every allegation contained above is incorporated by express reference as though fully set forth here.

53.   AIG / National Union and Stillwater are parties to an insurance contract, Policy No. 01-356-49-63.

54.   Pursuant to the Policy as interpreted by Montana law, AIG / National Union owes a duty to defend Stillwater in the Underlying Lawsuit because the claims against Stillwater fall within the Policy's coverages.

55.   An insurer owes a duty to defend "when a complaint against an insured alleges facts, which if proven, would result in coverage." *State Farm Mut. Auto. Ins. Co. v. Freyer*, 2013 MT 301, ¶ 26, 372 Mont. 191, 312 P.3d 403.

56.   "Unless there exists an unequivocal demonstration that the claim against an insured does not fall within the insurance policy's coverage, an insurer has a duty to defend." *Staples v. Farmers Union Mutual Ins. Co.*, 2004 MT 108, ¶22, 321 Mont. 99, 90 P.3d 381.

57. The Underlying Lawsuit alleges facts, which if proven, would result in coverage under the AIG / National Union policy.

58. For 2 ½ years after receiving notice of the Underlying claims, AIG / National Union provided no unequivocal demonstration that the claims against Stillwater in the Underlying Lawsuit did not fall within the policy's coverage.

59. The failure to provide any demonstration for 2 ½ years constitutes breach of the insurance contract.

60. AIG / National Union denied it owed duties to defend or indemnify Stillwater in the Underlying Action on November 12, 2019.  The denial does not unequivocally establish that the Underlying Lawsuit does not fall within the policy's coverage.

61. AIG / National Union's failure to make an unequivocal demonstration regarding its duty to defend Stillwater constitutes breach of the insurance contract.

62. AIG / National Union's failure to provide a defense to Stillwater in the Underlying Lawsuit constitutes breach of the insurance contract, and AIG / National Union is estopped from denying coverage and has forfeited policy defenses.

-12-

63.  Stillwater has suffered damages as a result of that breach, including costs of defense in the Underlying Lawsuit in amounts in excess of the policy limit; any and all amounts paid in settlement or judgment of the Underlying Lawsuit, including but not limited to the Settlement Interest of approximately $120,000, the Statutory Interest Payment of $7,905,482.65, and the Interest Award of $3,472,920.99; and costs and fees of bringing this action.

**COUNT II – Breach of the Duty to Defend by Excess Insurers.**

64.  Each and every allegation contained above is incorporated by express reference as though fully set forth here.

65.  The Excess Insurers and Plaintiff are parties to insurance contracts. ACE issued excess policy no. DOX G26811703 003 and QBE issued excess policy no. QPL0096237.

66.  Pursuant to the Policies as interpreted by Montana law, each Defendant owes a duty to defend Stillwater in the Underlying Lawsuit because the claims against Stillwater fall within the Policies' coverages. The damages incurred exceed $11,150,000, triggering ACE's coverage, and the damages incurred exceed $20,000,000, triggering QBE's coverage.

67.  An insurer owes a duty to defend "when a complaint against an insured

-13-

alleges facts, which if proven, would result in coverage." *Freyer* at ¶26.

68.   Unless there exists an unequivocal demonstration that the claim against an
insured does not fall within the insurance policy's coverage, an insurer has a
duty to defend. *Staples* at ¶ 22.

69.   The Underlying Lawsuit alleged facts, which if proven, would result in
coverage under the Excess Insurers' policies.

70.   The Excess Insurers denied they owed duties to defend or indemnify
Stillwater, but did not unequivocally demonstrate that the claims against
Stillwater in the Underlying Lawsuit did not fall within the policy's
coverage.

71.   The Excess Insurers' failure to make an unequivocal demonstration
regarding their duty to defend Stillwater constitutes breach of the insurance
contract.

72.   The Excess Insurers' failure to provide a defense to Stillwater in the
Underlying Lawsuit constitutes breach of the insurance contract, and the
Excess Insurers are estopped from denying coverage and have forfeited
policy defenses.

73.   Stillwater has suffered damages as a result of the Excess Insurers' breaches,
including costs of defense in the Underlying Lawsuit in excess of the

triggering limit for each Excess Insurer's policy; any and all amounts paid in settlement or judgment of the Underlying Lawsuit, including but not limited to the Settlement Interest of approximately $120,000, the Statutory Interest Payment of $7,905,482.65, and the Interest Award of $3,472,920.99; and costs and fees of bringing this action.

**COUNT III - Breach of Contract by all Defendants**

74. Each and every allegation contained above is incorporated by express reference as though fully set forth here.

75. The Defendants and Plaintiff are parties to insurance contracts. Pursuant to the Policies, each Defendant owes a duty to defend and indemnify Stillwater in the Underlying Lawsuit because the claims against Stillwater fall within the Policies' coverages.

76. Each policy of insurance contains an implied covenant of good faith and fair dealing. Each Defendant has breached the implied covenant, and thus breached the contract, by failing to conduct themselves with honesty in fact and failing to observe reasonable commercial standards of fair dealing in the trade.

77. Each Defendant has breached its contract of insurance with Stillwater by failing to provide defense and indemnity as required by each policy.

-15-

78.   Stillwater has suffered damages as a result of the Defendants' breaches, including costs of defense in the Underlying Lawsuit; any and all amounts paid in settlement or judgment of the Underlying Lawsuit, including but not limited to the Settlement Interest of approximately $120,000, the Statutory Interest Payment of $7,905,482.65, and the Interest Award of $3,472,920.99; and costs and fees of bringing this action.

**Count IV: Violation of the Unfair Trade Practice Act against all Defendants**

79.   Each and every allegation contained above is incorporated by express reference as though fully set forth here.

80.   As Plaintiff's insurers, Defendants must act in accordance with the Montana Unfair Trade Practices Act, §33-18-201, et seq.,  MCA ("the UTPA"). Defendant AIG, which acted as National Union's representative and adjusted the claim, must act in accordance with the UTPA.  *O'Fallon v. Farmers Ins. Exchange,* 260 Mont. 233, 244-45, 859 P.2d 1008, 115 (1993); *DeBruycker v. Guaranty National Ins. Co.*, 266 Mont. 294, 301, 880 P.2d 819, 823 (1994).

81.   Defendants have failed to act reasonably promptly upon communications with respect to claims arising under their insurance policies.

82.   Defendants have failed to affirm or deny coverage within a reasonable time.

83. Defendants compelled Stillwater to participate in litigation to recover amounts due under their insurance policies by claiming that the policies do not apply to the loss as determined by the Chancery Court.

84. Defendants misrepresented pertinent facts or insurance policy provisions relating to coverages at issue.

85. Defendants failed to conduct a reasonable investigation of its Policy as applied to the Underlying Lawsuit.

86. Defendants have failed to adopt and implement reasonable standards for the prompt investigation of claims arising under their insurance policies, including but not limited to the claims practices utilized by AIG as National Union's representative and the entity which adjusted the claim.

87. In engaging in the foregoing acts, and others, Defendants have violated the UTPA, § 33-18-201, MCA.

88. Stillwater has suffered damages as a result of Defendants' violations of the UTPA in amounts to be proven at trial, including costs of defense in the Underlying Lawsuit; any and all amounts paid in settlement or judgment of the Underlying Lawsuit, including but not limited to the Settlement Interest of approximately $120,000, the Statutory Interest Payment of $7,905,482.65, and the Interest Award of $3,472,920.99; and costs and fees in this action.

89.   Defendants have acted with actual malice as defined in § 27-1-221, MCA, in that Defendants have acted with knowledge of facts or have intentionally disregarded facts creating a high probability of injury to Stillwater.

90.   Pursuant to §33-18-242, MCA, the Defendants are liable to Plaintiff for all damages proximately caused by its violations of the UTPA, including punitive damages pursuant to § 27-1-221, MCA.

**Count V: Attorneys' Fees.**

91.   Each and every allegation contained above is incorporated by express reference as though fully set forth here.

92.   Plaintiff is entitled to an award of attorneys' fees incurred in bringing this action based on the "insurance exception" to the American Rule recognized by the Montana Supreme Court in *Abbey/Land, LLC v. Glacier Construction Partners, LLC*, 2019 MT 19, ¶ 64, 394 Mont. 135, 433 P.3d 1230.

WHEREFORE, Stillwater prays for judgment as follows:

1.   On Count I of the Complaint, Stillwater requests that this Court enter judgment in favor of Stillwater and against AIG / National Union in amount of costs of defense in the Underlying Lawsuit, which costs exceed the policy limits of the AIG / National Union policy and the ACE policy; any and all amounts paid in settlement or judgment of the Underlying Lawsuit, including

-18-

but not limited to the Settlement Interest of approximately $120,000, the

Statutory Interest Payment of $7,905,482.65, and the Interest Award of

$3,472,920.99; and costs and fees of bringing this action.

2.      On Count II of the Complaint, Stillwater requests that this Court enter

judgment in favor of Stillwater and against ACE and QBE, in an amount of

costs of defense in the Underlying Lawsuit, which costs exceed the policy

limits of the AIG / National Union policy and the ACE policy; any and all

amounts paid in settlement or judgment of the Underlying Lawsuit, including

but not limited to the Settlement Interest of approximately $120,000, the

Statutory Interest Payment of $7,905,482.65, and the Interest Award of

$3,472,920.99; and costs and fees of bringing this action.

3.      On Count III of the Complaint, Stillwater requests that this Court enter

judgment in favor of Stillwater and against Defendants, in an amount of

costs of defense in the Underlying Lawsuit, which costs exceed the policy

limits of the AIG / National Union policy and the ACE policy; any and all

amounts paid in settlement or judgment of the Underlying Lawsuit, including

but not limited to the Settlement Interest of approximately $120,000, the

Statutory Interest Payment of $7,905,482.65, and the Interest Award of

$3,472,920.99; and costs and fees of bringing this action.

4.    On Count IV,  Stillwater requests that this Court enter judgment in favor of

Stillwater and against Defendants, for the Defendants' violations of the

UTPA, in an amount of costs of defense in the Underlying Lawsuit, which

costs exceed the policy limits of the AIG / National Union policy and the

ACE policy; any and all amounts paid in settlement or judgment of the

Underlying Lawsuit, including but not limited to the Settlement Interest of

approximately $120,000, the Statutory Interest Payment of $7,905,482.65,

and the Interest Award of $3,472,920.99; and punitive damages as allowed

by Montana law and proven at trial.

5.    On Count V, Stillwater requests that this Court award Stillwater any fees and

costs incurred in bringing this action, and in defending any action pursued by

Defendants in any venue.

6.    Stillwater requests such other and further relief as the Court deems just and

proper.

## JURY DEMAND

**Plaintiff requests trial by jury.**

DATED this _21_ day of December, 2020.

SHEEHY LAW FIRM

By _Martha Sheehy_

Martha Sheehy

Attorney for Plaintiff

Martha Sheehy
Sheehy Law Firm
P.O. Box 584
Billings, MT 59103-0584
Telephone: (406) 252-2004
Fax: (866) 252-2004
msheehy@sheehylawfirm.com

Kyle A. Gray
Holland & Hart ᴸᴸᴾ
401 North 31st Street
Suite 1500
P. O. Box 639
Billings, Montana 59103-0639
Telephone: (406) 252-2166
Fax: (406) 252-1669

ATTORNEYS FOR PLAINTIFF

MONTANA TWENTY-SECOND JUDICIAL DISTRICT COURT
STILLWATER COUNTY

| | |
|---|---|
| STILLWATER MINING COMPANY, )<br><br>Plaintiff, )<br><br>v. )<br><br>AIG CLAIMS, INC.; NATIONAL )<br>UNION FIRE INSURANCE COMPANY )<br>Of PITTSBURGH, PA; ACE )<br>AMERICAN INSURANCE COMPANY, )<br>AND QBE INSURANCE )<br>CORPORATION, )<br><br>Defendants. )<br><br> | Cause No. DV 00-117<br><br>Hon. Matthew Wald<br><br><br>**SUMMONS** |

THE STATE OF MONTANA SENDS GREETINGS
TO THE ABOVE-NAMED DEFENDANT ACE AMERICAN INSURANCE COMPANY

You are hereby summoned to answer the Complaint in this action which is filed in the office of the Clerk of this Court, a copy of which is herewith served upon you and to file your answer and serve a copy thereof upon the plaintiff's attorney within twenty-one (21) days after the service of this Summons on you (or 42 days if you are the State of Montana, a state agency, or a state officer or employee), exclusive of the day of service; and in case of your failure to appear or answer, judgment will be taken against you by default, for the relief demanded in the Complaint.

WITNESS my hand and the seal of said Court this 21st day of December 2020.

SANDY FOX

CLERK OF DISTRICT COURT

(COURT SEAL)

By: _____
Deputy Clerk

Martha Sheehy
Sheehy Law Firm
P.O. Box 584
Billings, MT 59103-0584

Kyle A. Gray
Holland & Hart LLP
401 North 31st Street
Suite 1500
P. O. Box 639
Billings, Montana 59103-0639

ATTORNEYS FOR PLAINTIFF

2

**AFFIDAVIT OF SERVICE**

| Case:<br>DV 20-117 | Court:<br>Montana Twenty-Second Judicial District Court,<br>Stillwater County | County: | Job:<br>5204906 (20-636) |
|---|---|---|---|
| Plaintiff / Petitioner:<br>Stillwater Mining Company | | Defendant / Respondent:<br>ACE American Insurance Company., et al | |
| Received by:<br>The Browning Group LLC | | For:<br>Holland & Hart LLP | |
| To be served upon:<br>ACE American Insurance Company | | | |

I, Kenneth Browning, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

**Recipient Name / Address:**  ACE American Insurance Company c/o Stefoni Murphy (CT Corp Reg Agent) , 600 N 2nd St Ste 401, Harrisburg, PA 17101

**Manner of Service:**  Registered Agent, Dec 29, 2020, 12:48 pm EST

**Documents:**  Summons & Complaint (Received Dec 28, 2020 at 12:00pm EST)

**Additional Comments:**
1) Successful Attempt: Dec 29, 2020, 12:48 pm EST at 600 N 2nd St Ste 401, Harrisburg, PA 17101 received by ACE American Insurance Company c/o Stefoni Murphy (CT Corp Reg Agent) . Age: 35; Ethnicity: Caucasian; Gender: Female; Weight: 150; Height: 5'6"; Hair: Brown; Other: Cooperative ;
Hand Delivered

_____          12/31/2020
Kenneth Browning                Date

The Browning Group LLC
6571 Windmere Road
Harrisburg, PA 17111
1-800-939-2978

*Subscribed and sworn to before me by the affiant who is personally known to me.*

_____
Notary Public

12/31/2020          12/24/2023
Date                Commission Expires

Commonwealth of Pennsylvania-Notary Seal
DEREK MARK FOLK, NOTARY PUBLIC
CUMBERLAND COUNTY
MY COMMISSION EXPIRES DECEMBER 24, 2023
COMMISSION NUMBER 1358531

 **CT Corporation**

**Service of Process Transmittal**
12/23/2020
CT Log Number 538790950

**TO:** Janessa Turner
QBE Regional Companies (N.A.), Inc.
ONE QBE WAY
SUN PRAIRIE, WI 53596-0001

**RE:** **Process Served in Montana**

**FOR:** QBE Insurance Corporation  (Domestic State: PA)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | STILLWATER MINING COMPANY, PLTF. vs. AIG CLAIMS, INC., ET AL., DFTS. // TO: QBE INSURANCE CORPORATION |
| **DOCUMENT(S) SERVED:** | - |
| **COURT/AGENCY:** | None Specified<br>Case # DV20117 |
| **NATURE OF ACTION:** | Insurance Litigation |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Missoula, MT |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 12/23/2020 at 10:52 |
| **JURISDICTION SERVED :** | Montana |
| **APPEARANCE OR ANSWER DUE:** | None Specified |
| **ATTORNEY(S) / SENDER(S):** | None Specified |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 12/23/2020, Expected Purge Date: 12/28/2020 |
| | Image SOP |
| | Email Notification,  GSSC Claims  GSSC-ClaimsLegalAdmin.US-BOX@us.qbe.com |
| | Email Notification,  Ruby Remata  Ruby.Remata@us.qbe.com |
| | Email Notification,  Janessa Turner  janessa.turner@us.qbe.com |
| | Email Notification,  Taylor Willemot  taylor.willemot@us.qbe.com |
| **REGISTERED AGENT ADDRESS:** | C T Corporation System<br>3011 American Way<br>Missoula, MT 59808<br>800-448-5350<br>MajorAccountTeam1@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other

 CT Corporation

**Service of Process Transmittal**
12/23/2020
CT Log Number 538790950

**TO:**   Janessa Turner
QBE Regional Companies (N.A.), Inc.
ONE QBE WAY
SUN PRAIRIE, WI 53596-0001

**RE:**   **Process Served in Montana**

**FOR:**   QBE Insurance Corporation  (Domestic State: PA)

advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.

Martha Sheehy
Sheehy Law Firm
P.O. Box 584
Billings, MT 59103-0584
Telephone: (406) 252-2004
Fax: (866) 252-2004
msheehy@sheehylawfirm.com

Kyle A. Gray
Holland & Hart LLP
401 North 31st Street
Suite 1500
P. O. Box 639
Billings, Montana 59103-0639
Telephone: (406) 252-2166
Fax: (406) 252-1669

ATTORNEYS FOR PLAINTIFF

MONTANA TWENTY-SECOND JUDICIAL DISTRICT COURT
STILLWATER COUNTY

| | | |
|---|---|---|
| STILLWATER MINING COMPANY, | ) | Cause No. DV-20-117 |
| | ) | |
| Plaintiff, | ) | Hon. Matthew Wald |
| | ) | |
| v. | ) | |
| | ) | |
| AIG CLAIMS, INC.; NATIONAL | ) | **SUMMONS** |
| UNION FIRE INSURANCE COMPANY | ) | |
| Of PITTSBURGH, PA; ACE | ) | |
| AMERICAN INSURANCE COMPANY, | ) | |
| AND QBE INSURANCE | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

THE STATE OF MONTANA SENDS GREETINGS
TO THE ABOVE-NAMED DEFENDANT QBE INSURANCE CORPORATION

You are hereby summoned to answer the Complaint in this action which is filed in the office of the Clerk of this Court, a copy of which is herewith served upon you and to file your answer and serve a copy thereof upon the plaintiff's attorney within twenty-one (21) days after the service of this Summons on you (or 42 days if you are the State of Montana, a state agency, or a state officer or employee), exclusive of the day of service; and in case of your failure to appear or answer, judgment will be taken against you by default, for the relief demanded in the Complaint.

WITNESS my hand and the seal of said Court this 21st day of December 2020.

SANDY FOX

CLERK OF DISTRICT COURT

(COURT SEAL)

By: _____
        Deputy Clerk

Martha Sheehy
Sheehy Law Firm
P.O. Box 584
Billings, MT 59103-0584

Kyle A. Gray
Holland & Hart LLP
401 North 31st Street
Suite 1500
P. O. Box 639
Billings, Montana 59103-0639

ATTORNEYS FOR PLAINTIFF

2

Martha Sheehy
SHEEHY LAW FIRM
P. O. Box 584
Billings, Montana 59103-0584
Telephone: (406) 252-2004
Fax: (866) 477-5953
msheehy@sheehylawfirm.com

Kyle A. Gray
HOLLAND & HART LLP
401 N. 31st St., Suite 1500
Billings MT 59101
406-252-2166
kgray@hollandhart.com



FILED

DEC 31 2020

SANDRA M. FOX, CLERK
BY _____ Strom
DEPUTY

        Attorneys for Plaintiff


MONTANA TWENTY-SECOND JUDICIAL DISTRICT COURT
STILLWATER COUNTY

STILLWATER MINING COMPANY,

                        Plaintiff,

        -vs-

AIG CLAIMS, INC; NATIONAL
UNION FIRE INSURANCE COMPANY
OF PITTSBURGH, PA; ACE
AMERICAN INSURANCE COMPANY;
AND QBE INSURANCE
CORPORATION,

                        Defendants.

Cause No. DV 00-117
Hon. Matthew Wald

**COMPLAINT AND JURY
DEMAND**

-1-

COMES NOW Plaintiff Stillwater Mining Company, by and through its

counsel of record, Sheehy Law Firm, and for its Complaint states and alleges as

follows:

## I.    Parties and Venue

1.   Plaintiff Stillwater Mining Company ("Stillwater") is a mining company

incorporated under Delaware law with its principal place of business in

Stillwater County, Montana.  Stillwater is a wholly-owned subsidiary of

Thor Holdco US Inc., a Delaware corporation, which is a wholly-owned

subsidiary of Sibanye-Stillwater Limited, a South African corporation with

its principal place of business in South Africa.

2.   On information and belief, Defendant AIG Claims, Inc. ("AIG") is

incorporated under Delaware law and conducts business in all states,

including Montana.  AIG Claims, Inc., is the authorized representative for

National Union Fire Insurance Company of Pittsburgh, Pennsylvania, and

the entity which handled and adjusted Stillwater's claim on behalf of

National Union.

3.   On information and belief, Defendant National Union Fire Insurance

Company of Pittsburgh, Pennsylvania ("National Union") is incorporated

-2-

under Pennsylvania law with its principal place of business in New York, and conducts insurance business in Montana through policies issued in this state.

4. On information and belief, Defendant ACE American Insurance Company ("Chubb") is an insurance company incorporated under Pennsylvania law with its principal place of business in Pennsylvania and conducts insurance business in Montana through policies issued in this state.

5. On information and belief, Defendant QBE Insurance Corporation ("QBE") is an insurance company incorporated under Pennsylvania law with its principal place of business in Wisconsin and conducts insurance business in Montana through policies issued in this state.

6. Venue is appropriate pursuant to § 25-2-121, MCA.

7. Venue is appropriate pursuant to § 25-2-122, MCA.

8. This Court has personal jurisdiction over each Defendant because each of the Defendants is authorized to sell, write or adjust insurance in Montana, and provided policies of insurance to Stillwater, a business in Montana.

## II.   Factual Allegations

### A.   The Merger

9. Each and every allegation contained above is incorporated by express

-3-

reference as though fully set forth here.

10.    Stillwater is the only primary producer of platinum and palladium in the
United States.  Platinum and palladium are "critical minerals" according to
the Department of Interior, and are essential to the production of catalytic
converters, medical, and industrial applications.

11.    Stillwater is the largest hard rock mining operation in Montana, contributing
over $3 billion to Montana's gross domestic product annually and creating
nearly 9,000 jobs in Montana.

12.    Stillwater was incorporated in 1992 and was first publicly listed in 1994.

13.    Stillwater was publicly traded from 1994 until 2017.

14.    In 2017, Stillwater was acquired by and merged into an affiliate of Sibanye.

15.    As a result of the 2017 merger ("the Merger"), Stillwater became a wholly
owned subsidiary of Sibanye.

16.    Stillwater remains a standalone company after the Merger.

17.    The deal price for the Merger was $18.00 per share.

**B.   The Underlying Lawsuit**

18.    Prior to the closing of the Merger, on or about April 20, 2017, Stillwater
received appraisal demands from certain of its stockholders ("Underlying
Petitioners") demanding appraisal of their shares of Stillwater stock under

-4-

Delaware law, 8 Del. C. § 262.

19. Following closure of the Merger on May 14, 2017, the Underlying

Petitioners filed multiple appraisal lawsuits in Delaware Chancery Court.

20. The appraisal lawsuits were consolidated into the Appraisal Action

captioned *In re Appraisal of Stillwater Mining Company,* C.A. No. 2017-

385-JTL ("Underlying Lawsuit").

21. In the Underlying Lawsuit, the Underlying Petitioners sought a

determination of the fair value of their shares and an order that Stillwater pay

that fair value, together with statutory interest.

22. Throughout the Underlying Lawsuit, the Underlying Petitioners claimed that

the Merger price was inadequate because Stillwater's Board and CEO

breached their duties to obtain fair value, among other theories.  Petitioners

asserted that, but for these breaches, they would have received the fair value

of their shares of Stillwater's stock, which they claimed was $25.91 per share

– more than 40% over the agreed merger price of $18/share.

23. In August 2018, Stillwater settled the claim of certain Underlying Petitioners

on 340,000 shares for $18/share plus 1.75 % interest.  Stillwater paid at least

$120,000 of interest as part of this partial settlement ("the Settlement Interest

Payment").

24.    In September 2018, Stillwater pre-paid the remaining Underlying Petitioners

the last unaffected listed share price of $14.68 per share plus the statutory

interest on that amount, which totaled $7,905,482.65 ("the Statutory Interest

Payment").

25.    Trial was held in the Underlying Lawsuit from December 10, 2018 to

December 13, 2018.

26.    The Chancery Court ruled in favor of Stillwater, determining that Petitioners

failed to demonstrate a flawed and biased sale process, and that the Merger

deal price of $18 per share reflected the fair value of the Underlying

Petitioners' shares.

27.    Although Stillwater prevailed on the issue of the value of the shares, the

Chancery Court determined that the Underlying Petitioners were entitled to

punitive statutory interest on the appraised fair value of their shares accruing

"at the statutory rate, compounded quarterly, from the Transaction Date until

the date of payment ("Interest Award")."

28.    The Order imposed an effective interest rate of 7.921%.

29.    On September 27, 2019, the Court entered a Post-Trial Judgment ordering

Stillwater to pay a judgment consisting of:

1.    $18 per share less the prepayment of $14.68 per share, for a payment

-6-

of $3.32 per share; and

    2.    The Interest Award reflecting the statutory interest rate on the unpaid

        value of the shares from May 4, 2017 to September 30, 2019.

30.    Stillwater paid the Interest Award in the amount of $3,472,920.99 to

Petitioners.

31.    Underlying Petitioners appealed the award in the Delaware Supreme Court,

and the Delaware Supreme Court affirmed the trial court's decision.

32.    Stillwater incurred attorneys' fees and other costs defending the Underlying

Lawsuit which exceed the policy limits of the AIG / National Union policy

and the ACE policy.

**C.    Stillwater's D&O Policies.**

33.    The Defendants issued insurance policies to Stillwater providing primary or

excess directors' and officers' liability insurance coverage for claims made

during the policy period from May 1, 2016 to August 1, 2017.

34.    AIG issued primary policy no. 01-356-49-63 with an aggregate limit of $10

million above a self-insured retention of $1.5 million applicable to Securities

Claims (the "Primary Policy").

35.    The remaining Defendants issued excess policies as follows:

    a.    ACE issued excess policy no. DOX G26811703 003 with an aggregate

limit of $10 million excess of $10 million; and

b.    QBE issued excess policy no. QPL0096237 with an aggregate limit of $10 million excess of $20 million.

36.    The ACE and QBE Policies are collectively referred to as "Excess Policies" and, together with the Primary Policy, the "D&O Policies."  ACE and QBE are referred to as the "Excess Insurers."

37.    Except as otherwise expressly provided, the Excess Policies "follow form" to the terms and conditions of the Primary Policy, meaning that they adopt those terms and conditions as if fully set forth in their policy language.

38.    The limits of the D&O Policies specifically encompass and provide coverage for attorneys fees expended in the defense of a claim.  Defense costs erode the policy limits.

39.    Pursuant to the Insuring Agreement of the Primary Policy, the Defendants agreed to pay, on behalf of Stillwater, "Loss of any Organization: (1) arising from any Securities Claim made against such Organization for any Wrongful Act of such Organization . . . ." § 1c.

40.    Under the Primary Policy, the term "Organization" includes Stillwater. § 13 Definitions.

41.    The Primary Policy defines a "Securities Claim" to mean a "Claim":

(1) alleging a violation of any law, rule or regulation, whether statutory or common law (including but not limited to the purchase or sale or offer or solicitation of an offer to purchase or sell securities), which is:

    (a) brought by any person or entity alleging, arising out of, based upon or attributable to the purchase or sale or offer or solicitation of an offer to purchase or sell any securities of an Organization; or

    (b) brought by a security holder or purchaser or seller of securities of an Organization with respect to such security holder's, purchaser's or seller of securities of an Organization with respect to such security holder's, purchaser's or seller's interest in securities of such Organization. . . .

Primary Policy, § 13 Definitions (Amended by Endorsement 12).

42. The Primary Policy broadly defines "Wrongful Act" to include "with respect to an Organization, any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act by such Organization, but solely in regard to a Securities Claim." § 13 Definitions.

43. "Loss" covered by the Primary Policy is also broadly defined to mean "damages, settlements, judgments (including pre/post-judgment interest on a covered judgment), [and] Defense Costs . . . ." § 13 Definitions.

44. "Loss" with respect to Securities Claims also includes "punitive, exemplary and multiplied damages," which is "governed by such applicable law that most favors coverage for such penalties and punitive, exemplary and multiple damages." § 13 Definitions.

45.   Defense Costs are further defined in the Primary Policy to include

"reasonable and necessary fees, costs and expenses consented to by the

Insurer . . . resulting solely from: (1) the investigation, adjustment, defense

and/or appeal of a Claim against an Insured . . . ." § 13 Definitions.

**D.   Defendants' Wrongful Denials of Stillwater's Request for Defense and Indemnity.**

46.   Stillwater timely notified the Defendant of the appraisal demands on or about

April 25, 2017, and specifically requested that Defendants confirm approval

of Stillwater incurring defense costs.

47.   On May 23, 2017, AIG acknowledged receipt of proper notice of the claims.

48.   On June 1, 2017, AIG informed Stillwater's counsel that AIG would issue a

disclaimer, but did not send a written disclaimer.

49.   On November 4, 2019, Stillwater again requested payment of defense costs

and updated AIG as to the status of the Underlying Lawsuit.

50.   On November 12, 2019, AIG responded to Stillwater's demand and denied

any duty to defend or indemnify Stillwater based on the following analysis:

The Appraisal Action is not a Claim alleging a violation of any law,
rule or regulation and as such does not assert a Securities Claim. The
Petitioners sought a judicial determination of the fair value of their
shares.

-10-

Moreover, the Appraisal Action did not allege a Wrongful Act. Again, the Petitioners sought a judicial determination as to the fair value of their shares.

51.   The Excess insurers did not assert defenses and presented no basis for denying defense and indemnity.

**COUNT I- Breach of the Duty to Defend by AIG / National Union.**

52.   Each and every allegation contained above is incorporated by express reference as though fully set forth here.

53.   AIG / National Union and Stillwater are parties to an insurance contract, Policy No. 01-356-49-63.

54.   Pursuant to the Policy as interpreted by Montana law, AIG / National Union owes a duty to defend Stillwater in the Underlying Lawsuit because the claims against Stillwater fall within the Policy's coverages.

55.   An insurer owes a duty to defend "when a complaint against an insured alleges facts, which if proven, would result in coverage." *State Farm Mut. Auto. Ins. Co. v. Freyer*, 2013 MT 301, ¶ 26, 372 Mont. 191, 312 P.3d 403.

56.   "Unless there exists an unequivocal demonstration that the claim against an insured does not fall within the insurance policy's coverage, an insurer has a duty to defend." *Staples v. Farmers Union Mutual Ins. Co.*, 2004 MT 108, ¶22, 321 Mont. 99, 90 P.3d 381.

57.  The Underlying Lawsuit alleges facts, which if proven, would result in coverage under the AIG / National Union policy.

58.  For 2 ½ years after receiving notice of the Underlying claims, AIG / National Union provided no unequivocal demonstration that the claims against Stillwater in the Underlying Lawsuit did not fall within the policy's coverage.

59.  The failure to provide any demonstration for 2 ½ years constitutes breach of the insurance contract.

60.  AIG / National Union denied it owed duties to defend or indemnify Stillwater in the Underlying Action on November 12, 2019.  The denial does not unequivocally establish that the Underlying Lawsuit does not fall within the policy's coverage.

61.  AIG / National Union's failure to make an unequivocal demonstration regarding its duty to defend Stillwater constitutes breach of the insurance contract.

62.  AIG / National Union's failure to provide a defense to Stillwater in the Underlying Lawsuit constitutes breach of the insurance contract, and AIG / National Union is estopped from denying coverage and has forfeited policy defenses.

-12-

63.  Stillwater has suffered damages as a result of that breach, including costs of
defense in the Underlying Lawsuit in amounts in excess of the policy limit;
any and all amounts paid in settlement or judgment of the Underlying
Lawsuit, including but not limited to the Settlement Interest of
approximately $120,000, the Statutory Interest Payment of $7,905,482.65,
and the Interest Award of $3,472,920.99; and costs and fees of bringing this
action.

**COUNT II – Breach of the Duty to Defend by Excess Insurers.**

64.  Each and every allegation contained above is incorporated by express
reference as though fully set forth here.

65.  The Excess Insurers and Plaintiff are parties to insurance contracts. ACE
issued excess policy no. DOX G26811703 003 and QBE issued excess
policy no. QPL0096237.

66.  Pursuant to the Policies as interpreted by Montana law, each Defendant owes
a duty to defend Stillwater in the Underlying Lawsuit because the claims
against Stillwater fall within the Policies' coverages. The damages incurred
exceed $11,150,000, triggering ACE's coverage, and the damages incurred
exceed $20,000,000, triggering QBE's coverage.

67.  An insurer owes a duty to defend "when a complaint against an insured

-13-

alleges facts, which if proven, would result in coverage." *Freyer* at ¶26.

68. Unless there exists an unequivocal demonstration that the claim against an insured does not fall within the insurance policy's coverage, an insurer has a duty to defend. *Staples* at ¶ 22.

69. The Underlying Lawsuit alleged facts, which if proven, would result in coverage under the Excess Insurers' policies.

70. The Excess Insurers denied they owed duties to defend or indemnify Stillwater, but did not unequivocally demonstrate that the claims against Stillwater in the Underlying Lawsuit did not fall within the policy's coverage.

71. The Excess Insurers' failure to make an unequivocal demonstration regarding their duty to defend Stillwater constitutes breach of the insurance contract.

72. The Excess Insurers' failure to provide a defense to Stillwater in the Underlying Lawsuit constitutes breach of the insurance contract, and the Excess Insurers are estopped from denying coverage and have forfeited policy defenses.

73. Stillwater has suffered damages as a result of the Excess Insurers' breaches, including costs of defense in the Underlying Lawsuit in excess of the

triggering limit for each Excess Insurer's policy; any and all amounts paid in settlement or judgment of the Underlying Lawsuit, including but not limited to the Settlement Interest of approximately $120,000, the Statutory Interest Payment of $7,905,482.65, and the Interest Award of $3,472,920.99; and costs and fees of bringing this action.

**COUNT III - Breach of Contract by all Defendants**

74.   Each and every allegation contained above is incorporated by express reference as though fully set forth here.

75.   The Defendants and Plaintiff are parties to insurance contracts. Pursuant to the Policies, each Defendant owes a duty to defend and indemnify Stillwater in the Underlying Lawsuit because the claims against Stillwater fall within the Policies' coverages.

76.   Each policy of insurance contains an implied covenant of good faith and fair dealing. Each Defendant has breached the implied covenant, and thus breached the contract, by failing to conduct themselves with honesty in fact and failing to observe reasonable commercial standards of fair dealing in the trade.

77.   Each Defendant has breached its contract of insurance with Stillwater by failing to provide defense and indemnity as required by each policy.

-15-

78.   Stillwater has suffered damages as a result of the Defendants' breaches, including costs of defense in the Underlying Lawsuit; any and all amounts paid in settlement or judgment of the Underlying Lawsuit, including but not limited to the Settlement Interest of approximately $120,000, the Statutory Interest Payment of $7,905,482.65, and the Interest Award of $3,472,920.99; and costs and fees of bringing this action.

**Count IV: Violation of the Unfair Trade Practice Act against all Defendants**

79.   Each and every allegation contained above is incorporated by express reference as though fully set forth here.

80.   As Plaintiff's insurers, Defendants must act in accordance with the Montana Unfair Trade Practices Act, §33-18-201, et seq.,  MCA ("the UTPA"). Defendant AIG, which acted as National Union's representative and adjusted the claim, must act in accordance with the UTPA. *O'Fallon v. Farmers Ins. Exchange,* 260 Mont. 233, 244-45, 859 P.2d 1008, 115 (1993); *DeBruycker v. Guaranty National Ins. Co.*, 266 Mont. 294, 301, 880 P.2d 819, 823 (1994).

81.   Defendants have failed to act reasonably promptly upon communications with respect to claims arising under their insurance policies.

82.   Defendants have failed to affirm or deny coverage within a reasonable time.

-16-

83. Defendants compelled Stillwater to participate in litigation to recover amounts due under their insurance policies by claiming that the policies do not apply to the loss as determined by the Chancery Court.

84. Defendants misrepresented pertinent facts or insurance policy provisions relating to coverages at issue.

85. Defendants failed to conduct a reasonable investigation of its Policy as applied to the Underlying Lawsuit.

86. Defendants have failed to adopt and implement reasonable standards for the prompt investigation of claims arising under their insurance policies, including but not limited to the claims practices utilized by AIG as National Union's representative and the entity which adjusted the claim.

87. In engaging in the foregoing acts, and others, Defendants have violated the UTPA, § 33-18-201, MCA.

88. Stillwater has suffered damages as a result of Defendants' violations of the UTPA in amounts to be proven at trial, including costs of defense in the Underlying Lawsuit; any and all amounts paid in settlement or judgment of the Underlying Lawsuit, including but not limited to the Settlement Interest of approximately $120,000, the Statutory Interest Payment of $7,905,482.65, and the Interest Award of $3,472,920.99; and costs and fees in this action.

-17-

89. Defendants have acted with actual malice as defined in § 27-1-221, MCA, in that Defendants have acted with knowledge of facts or have intentionally disregarded facts creating a high probability of injury to Stillwater.

90. Pursuant to §33-18-242, MCA, the Defendants are liable to Plaintiff for all damages proximately caused by its violations of the UTPA, including punitive damages pursuant to § 27-1-221, MCA.

**Count V: Attorneys' Fees.**

91. Each and every allegation contained above is incorporated by express reference as though fully set forth here.

92. Plaintiff is entitled to an award of attorneys' fees incurred in bringing this action based on the "insurance exception" to the American Rule recognized by the Montana Supreme Court in *Abbey/Land, LLC v. Glacier Construction Partners, LLC*, 2019 MT 19, ¶ 64, 394 Mont. 135, 433 P.3d 1230.

WHEREFORE, Stillwater prays for judgment as follows:

1. On Count I of the Complaint, Stillwater requests that this Court enter judgment in favor of Stillwater and against AIG / National Union in amount of costs of defense in the Underlying Lawsuit, which costs exceed the policy limits of the AIG / National Union policy and the ACE policy; any and all amounts paid in settlement or judgment of the Underlying Lawsuit, including

-18-

but not limited to the Settlement Interest of approximately $120,000, the Statutory Interest Payment of $7,905,482.65, and the Interest Award of $3,472,920.99; and costs and fees of bringing this action.

2. On Count II of the Complaint, Stillwater requests that this Court enter judgment in favor of Stillwater and against ACE and QBE, in an amount of costs of defense in the Underlying Lawsuit, which costs exceed the policy limits of the AIG / National Union policy and the ACE policy; any and all amounts paid in settlement or judgment of the Underlying Lawsuit, including but not limited to the Settlement Interest of approximately $120,000, the Statutory Interest Payment of $7,905,482.65, and the Interest Award of $3,472,920.99; and costs and fees of bringing this action.

3. On Count III of the Complaint, Stillwater requests that this Court enter judgment in favor of Stillwater and against Defendants, in an amount of costs of defense in the Underlying Lawsuit, which costs exceed the policy limits of the AIG / National Union policy and the ACE policy; any and all amounts paid in settlement or judgment of the Underlying Lawsuit, including but not limited to the Settlement Interest of approximately $120,000, the Statutory Interest Payment of $7,905,482.65, and the Interest Award of $3,472,920.99; and costs and fees of bringing this action.

4.   On Count IV, Stillwater requests that this Court enter judgment in favor of
     Stillwater and against Defendants, for the Defendants' violations of the
     UTPA, in an amount of costs of defense in the Underlying Lawsuit, which
     costs exceed the policy limits of the AIG / National Union policy and the
     ACE policy; any and all amounts paid in settlement or judgment of the
     Underlying Lawsuit, including but not limited to the Settlement Interest of
     approximately $120,000, the Statutory Interest Payment of $7,905,482.65,
     and the Interest Award of $3,472,920.99; and punitive damages as allowed
     by Montana law and proven at trial.

5.   On Count V, Stillwater requests that this Court award Stillwater any fees and
     costs incurred in bringing this action, and in defending any action pursued by
     Defendants in any venue.

6.   Stillwater requests such other and further relief as the Court deems just and
     proper.

### JURY DEMAND

**Plaintiff requests trial by jury.**

DATED this _21_ day of December, 2020.

SHEEHY LAW FIRM

By _Martha Sheehy_
Martha Sheehy

Attorney for Plaintiff

-21-