Carey E. Matovich
Katherine S. Huso
MATOVICH, KELLER & HUSO, P.C.
2812 1st Avenue North, Suite 225
Billings, MT  59101
(406) 252-5500 Phone
(406) 252-4613 Fax
cmatovich@mkhattorneys.com
khuso@mkhattorneys.com
 ATTORNEYS FOR DEFENDANTS AIG CLAIMS, NATIONAL UNION, AND QBE

Elizabeth E. Lund
BERG LILLY, P.C.
1 West Main Street
Bozeman, MT  59715
(406) 587-3181 Phone
(406) 587-3240 Fax
lund@berglawfirm.com
 ATTORNEY FOR DEFENDANT ACE AMERICAN

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| STILLWATER MINING COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>AIG CLAIMS, INC.; NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.; ACE AMERICAN INSURANCE COMPANY; AND QBE INSURANCE CORPORATION,<br><br>Defendants. | CV 21-4-BLG-SPW-TJC<br><br><br>**DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO STAY** |

## TABLE OF CONTENTS

EXHIBIT INDEX ...................................................................................... v

INTRODUCTION .................................................................................... 1

BACKGROUND ...................................................................................... 3

   A.  The Insurance Policies ................................................................ 3

   B.  The Underlying Delaware Appraisal Action .............................. 5

   C.  The Parallel Coverage Litigation in Delaware ......................... 8

   D.  The Delaware Supreme Court's Decision in *In re Solera Insurance Coverage Appeals* ............................................................... 9

   E.  This Litigation ......................................................................... 12

ARGUMENT ......................................................................................... 13

I.   The Relevant Factors Strongly Favor Abstention under *Colorado River* ........ 13

   A.  Stillwater Is Blatantly Forum Shopping ................................. 16

   B.  Abstention Will Avoid Piecemeal Litigation ........................... 19

   C.  The Delaware Superior Court Obtained Jurisdiction First ...... 21

   D.  The Delaware Litigation Will Resolve All Issues in This Action ..... 22

   E.  Montana Is an Inconvenient Forum .......................................... 23

   F.  The Remaining Factors Do Not Weigh Against Abstention ...... 24

II.  The Proper Remedy Is a Stay of All Proceedings Pending Resolution of the Delaware Litigation ........................................................................... 25

CONCLUSION ...................................................................................... 26

CERTIFICATE OF COMPLIANCE ....................................................... 27

CERTIFICATE OF SERVICE ............................................................... 28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ala. By-Prod. Corp. v. Cede & Co. on Behalf of Shearson Lehman
    Bros.*,
    657 A.2d 265 (Del. 1995) ...................................................................7

*Am. Int'l Underwriters (Philippines), Inc. v. Cont'l Ins. Co.*,
    843 F.2d 1253 (9th Cir. 1988) ....................................................*passim*

*AT&T Wireless Servs., Inc. v. Fed. Ins. Co.*,
    2005 WL 2155695 (Del. Super. Ct. Aug. 18, 2005)...........................21

*Attwood v. Mendocino Coast Dist. Hosp.*,
    886 F.2d 241 (9th Cir. 1989) ............................................................25

*Bailey v. Mont. Dep't of Health & Human Servs.*,
    2009 WL 330280 (D. Mont. Feb. 4, 2009)......................16, 18, 19, 25

*Brigade Leveraged Capital Structures Fund Ltd. v. Stillwater Mining
    Co.*,
    240 A.3d 3 (Del. 2020) ......................................................................7

*Colorado River Water Conservation District v. United States*,
    424 U.S. 800 (1976)...............................................................1, 14, 24

*Lumen Constr., Inc. v. Brant Constr. Co. Inc.*,
    780 F.2d 691 (7th Cir. 1985) ............................................................14

*Montanore Minerals Corp. v. Bakie*,
    867 F.3d 1160 (9th Cir. 2017) ...................................................*passim*

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983)..............................................................................15

*Nakash v. Marciano*,
    882 F.2d 1411 (9th Cir. 1989) .......................................14, 16, 18, 19

*R.R. St. & Co. Inc. v. Transp. Ins. Co.*,
    656 F.3d 966 (9th Cir. 2011) .....................................................20, 25

*Schenley Indus., Inc. v. Curtis*,
   152 A.2d 300 (Del. 1959) ....................................................................................6

*Seneca Ins. Co., Inc. v. Strange Land, Inc.*,
   862 F.3d 835 (9th Cir. 2017) ......................................................................14, 16

*Solera Holdings, Inc. v. XL Specialty Ins. Co.*,
   213 A.3d 1249 (Del. Super. Ct. 2019) ...............................................................10

*In re Solera Insurance Coverage Appeals*,
   240 A.3d 1121 (Del. 2020) .......................................................................*passim*

*SSI Big Sky LLC v. Russell*,
   2011 WL 13133968 (D. Mont. June 7, 2011) ..................................14, 20, 22, 23

*In re Stillwater Mining Co.*,
   2019 WL 3943851 (Del. Ch. Aug. 21, 2019) ..................................................5, 7

*Travelers Indem. Co. v. Madonna*,
   914 F.2d 1364 (9th Cir. 1990) ....................................................................24, 25

**Statutes**

8 Del. C. § 262 ......................................................................................*passim*

8 Del. C. § 262(i) ..............................................................................................6

8 Del. C. § 262(h)..............................................................................................6

28 U.S.C. § 1332.............................................................................................13

**Other Authorities**

Del. Super. Ct. Rule 41(a)(2) ..........................................................................21

# EXHIBIT INDEX

The following Exhibits are attached to the accompanying Declaration of Katherine S. Huso:

- Exhibit A – National Union's Delaware Complaint

- Exhibit B – Stillwater's Delaware Complaint

- Exhibit C – Stillwater's Delaware Answer

- Exhibit D – Stillwater's Delaware Motion for Judgement on the pleadings

- Exhibit E – Delaware Consolidation Order

- Exhibit F – National Union Delaware Answer

- Exhibit G – ACE Delaware Answer and Counterclaim

- Exhibit H – QBE Delaware Answer and Counterclaim

- Exhibit I – Stillwater Delaware Answer to ACE Counterclaim

- Exhibit J – Stillwater Delaware Answer to QBE Counterclaim

- Exhibit K – Delaware Stay Pending *Solera*

- Exhibit L – Stillwater Delaware Motion to Dismiss or Amend

- Exhibit M – Stillwater Proposed Delaware Amended Complaint

## INTRODUCTION

This is a textbook case for a stay of all proceedings in federal court pending resolution of ongoing parallel state-court litigation. Under the abstention doctrine announced in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), federal courts have discretionary authority to stay or dismiss a case in deference to a substantially similar case pending in state court. Resting on principles of comity and judicial economy, the *Colorado River* doctrine conserves judicial resources, avoids piecemeal litigation, and prevents gamesmanship and forum shopping. Federal courts commonly invoke the doctrine where, as here, a party that has been litigating a dispute in state court receives an adverse ruling but, rather than accept it, seeks to evade it by filing a new case elsewhere.

This is an insurance coverage dispute in which Plaintiff Stillwater Mining Company ("Stillwater") is seeking coverage under insurance policies issued by Defendants National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union"), ACE American Insurance Company ("ACE"), and QBE Insurance Corporation ("QBE") (together, the "Insurers"). The parties are already presently litigating their coverage dispute in two consolidated lawsuits that have been ongoing in Delaware state court for the better part of a year. In those lawsuits—one of which Stillwater itself filed—Stillwater repeatedly alleged and argued that Delaware law applies and that Delaware has a strong state interest in the parties' dispute. Stillwater

even moved for judgment on the pleadings in Delaware state court arguing that it was entitled to coverage under Delaware law.

That all changed in October 2020 when the Delaware Supreme Court decided *In re Solera Insurance Coverage Appeals*, 240 A.3d 1121 (Del. 2020). There, the court held that, under Delaware law, the kinds of losses for which Stillwater is seeking coverage are not covered under insurance policies that are materially identical to the policies at issue here.  But rather than accept that the Delaware Supreme Court's binding, precedential decision in *Solera* doomed Stillwater's demands for coverage, Stillwater attempted to switch forums and change the governing law.  In late December 2020, Stillwater filed this action against the Insurers seeking the same coverage Stillwater had previously sought under Delaware law in the Delaware litigation, but now in Montana state court under Montana law. The Insurers then removed the action to this Court.  And on the same day it filed its complaint in this action, Stillwater filed a motion in the consolidated Delaware cases seeking an order granting voluntary dismissal or, in the alternative, leave to file an amended complaint that is essentially identical to the complaint in this case.

It is difficult to imagine a fact pattern that more clearly calls for abstention under *Colorado River*.  Any further proceedings in this case will waste party and court resources, risk inconsistent judgments, and reward gamesmanship and forum

2

shopping.  This Court should enter a stay of all further proceedings in this case pending resolution of the ongoing parallel litigation in Delaware state court.

## BACKGROUND

### A.    The Insurance Policies

Stillwater is seeking coverage under three insurance policies issued by National Union, ACE, and QBE, respectively.  *See* ECF No. 1-4, at 22-24.

National Union issued Stillwater a directors-and-officers insurance policy—Executive Edge Insurance Policy No. 01-356-49-63 (the "National Union Policy")—with a policy period of May 1, 2016 to August 1, 2017.  ECF No. 1-1.  While this policy was intended primarily to protect the directors and officers of Stillwater against liability for actions taken in their official capacities, it also provides coverage to Stillwater itself in limited circumstances.  In particular, Insuring Agreement C of the National Union Policy provides that the policy "shall pay the **Loss** of any **Organization** arising from any **Securities Claim**."  *Id.* at 12.[1]  "**Loss**" is defined to include defense costs and "pre/postjudgment interest on a covered judgment," and "**Organization**" is defined to include Stillwater.  *Id.* at 8, 33-34.  Critically, "**Securities Claim**" is defined in relevant part as "a **Claim**," including a lawsuit, "alleging a *violation* of any law, rule or regulation, whether statutory or common

---

[1] Terms in **bold** appear as such in the National Union Policy and are defined terms under the policy.

law." *Id.* at 54 (emphasis added). The National Union Policy also contains an alternative dispute resolution provision, which requires "the mediator or arbitrator(s) [to] give due regard to the general principles of the law of the **State of Formation** of the **Named Entity**"—that is, the law of Delaware, where Stillwater is incorporated. ECF No. 1-1, at 26; *see* ECF No. 1-4, at 6.

The National Union Policy has an aggregate limit of liability of $10 million in excess of any applicable self-insured retention—including a "Securities Retention" of $1.5 million. ECF No. 1-1, at 8. Stillwater thus retained the risk up to $1.5 million, and National Union would be liable for covered losses only in excess of that amount, capped at an aggregate limit of $10 million.

On top of National Union's coverage, ACE and QBE each issued their own insurance policies to Stillwater providing additional coverage—policy No. DOX G26811703 003 (the "ACE Policy") and policy No. QPL0096237 (the "QBE Policy"). ECF Nos. 1-2, 1-3. Together, the National Union, ACE, and QBE Policies provide an integrated "tower" of $30 million in coverage. The ACE Policy has an aggregate limit of $10 million in excess of $10 million, and the QBE Policy has an aggregate limit of $10 million in excess of $20 million. *See* ECF No. 1-4, at 11-12. Unless otherwise provided, the ACE Policy and the QBE Policy "follow form" to the National Union Policy, meaning that they incorporate the terms and conditions of the National Union Policy by reference. *See id.* at 12. Among the incorporated

terms are Insuring Agreement C, which limits coverage for Stillwater itself to losses arising from a "Securities Claim," and the Securities Claim definition, which limits a Securities Claim to a claim "alleging a violation of a[] law, rule or regulation."

### B.     The Underlying Delaware Appraisal Action

Stillwater is seeking coverage under the National Union, ACE, and QBE Policies for defense costs incurred and interest payments made in connection with an underlying lawsuit filed against Stillwater by certain Stillwater stockholders. ECF No. 1-4, at 22-24.  That underlying lawsuit arose out of a merger transaction in which Stillwater was acquired by and merged into Sibanye Gold Limited ("Sibanye"), a South African mining company.  *See id.* at 8; *In re Stillwater Mining Co.*, 2019 WL 3943851, at *1 (Del. Ch. Aug. 21, 2019), *aff'd*, 240 A.3d 3 (Del. 2020).  In the merger transaction, Sibanye acquired all shares of Stillwater stock for $18.00 per share—approximately a 25% premium over the previous 30-day average trading price.  *Id.*  The merger closed on May 4, 2017.  *Id.*

Later that month, various Stillwater stockholders filed multiple lawsuits against Stillwater in the Delaware Court of Chancery seeking a statutory appraisal under 8 *Del. C.* § 262.  *See* ECF No. 1-4, at 9.  Those lawsuits were consolidated in one action (the "Delaware Appraisal Action").  *See id.*  In an appraisal action under § 262, a stockholder who dissented from a merger transaction eschews the negotiated merger price and sues the surviving corporation to obtain "an appraisal

by the Court of Chancery of the fair value of the stockholder's shares of stock." *Id.*
§ 262(a).  At the conclusion of the appraisal proceedings, the surviving corporation
must pay the petitioning dissenting stockholder the judicially-determined fair
value—whether that fair value is the same as, more than, or less than the negotiated
deal price.  *Id.* § 262(i).  The surviving corporation also may be ordered to pay
interest on the judicially-determined fair value, unless the surviving corporation
makes a statutorily authorized prepayment.  *Id.* § 262(h).

   Section 262 is a legislative reform that was enacted when Delaware authorized
mergers to be approved by a majority of stockholders, rather than unanimously.  "At
common law," before the appraisal statute was enacted, "no consolidation or merger
of corporations could be effected except with the consent of all the stockholders."
*Schenley Indus., Inc. v. Curtis*, 152 A.2d 300, 301 (Del. 1959).  That scheme
"brought about an intolerable situation, since one or more minority stockholders, if
he or they desired to do so, could impede the action of all the other stockholders."
*Id.*  When that situation eventually "was changed by statute in Delaware[] to permit
the consolidation or merger of two or more corporations without the consent of all
stockholders, it became necessary to protect the contractual rights of such
stockholders . . . by providing for the appraisement of their stock and the payment
to them of the full value thereof in money."  *Id.*  Appraisal thus "is a limited
legislative remedy developed initially as a means to compensate shareholders of

Delaware corporations for the loss of their common law right to prevent a merger or consolidation by refusal to consent to such transactions." *Ala. By-Prod. Corp. v. Cede & Co. on Behalf of Shearson Lehman Bros.*, 657 A.2d 265, 258 (Del. 1995).

Here, the negotiated terms of the merger agreement called for Stillwater's stockholders to receive $18.00 per share. In August 2018, Stillwater settled with certain dissenting stockholder-petitioners for $18.00 per share plus 1.75% interest. ECF No. 1-4, at 9. The remaining dissenting stockholder-petitioners went to trial, arguing that they should have received $25.91 per share. *See In re Stillwater Mining Co.*, 2019 WL 3943851, at *1. The Delaware Court of Chancery, however, concluded that the fair value was $18.00 per share—equal to the deal price. *See id.* at *61. The Delaware Supreme Court later affirmed. *See Brigade Leveraged Capital Structures Fund Ltd. v. Stillwater Mining Co.*, 240 A.3d 3, 4 (Del. 2020).

In connection with the Delaware Appraisal Action, Stillwater paid a total of approximately $11.5 million in interest and incurred an unspecified amount of attorneys' fees and other defense costs. ECF No. 1-4, at 9-11. Stillwater's interest payments and defense costs together allegedly exceed $20 million. *Id.* at 17.

Stillwater allegedly notified National Union about the dissenting stockholders' appraisal demands in April 2017, and thereafter allegedly notified National Union about the Delaware Appraisal Action. *See* ECF No. 1-4, at 14. In June 2017, National Union informed Stillwater that National Union would disclaim

coverage for the Delaware Appraisal Action.  *See id.*  In November 2019, Stillwater again sought coverage for its defense costs incurred in the Delaware Appraisal Action, and later that month, National Union issued a written denial of coverage.  *Id.* National Union explained, among other things, that "[t]he [Delaware] Appraisal Action is not a Claim alleging a violation of any law, rule or regulation[,] and as such does not assert a Securities Claim."  *Id.*  Stillwater then invoked mediation, which proved unsuccessful.  Ex. A, ¶ 40.

### C.     The Parallel Coverage Litigation in Delaware

On April 13, 2020, National Union filed suit against Stillwater in Delaware Superior Court, seeking a declaration that the National Union Policy "does not provide insurance coverage for defense expenses and statutory interest resulting from an 'appraisal' suit." Ex. A, ¶ 1.  Nine days later, on April 22, 2020, Stillwater filed its own complaint in Delaware Superior Court against National Union, ACE, and QBE, as well as certain other excess insurers, seeking "insurance coverage" for Stillwater's defense costs and interest payments "resulting from an appraisal action filed in the Delaware Chancery Court by certain Stillwater stockholders, pursuant to 8 Del. C. § 262." Ex. B, ¶ 1.[2]  Stillwater expressly alleged that "Delaware law applies to the principles of contract interpretation at issue in this proceeding."  *Id.* ¶

---

[2] Stillwater did not seek coverage for the actual fair-value payments it made to its stockholders.  *See* Ex. B.  Those payments are excluded from coverage.  *See* ECF No. 1-1, at 32-33.

19.   Stillwater further alleged that "Delaware has a strong state interest in the application of its principles of corporate law and governance in construing the directors' and officers' liability insurance policies at issue in this matter."  *Id.*

On June 12, 2020, Stillwater answered National Union's complaint and, on the same day, filed a motion for judgment on the pleadings.  Exs. C, D.  In support of that motion, Stillwater expressly argued that "because this claim involves D&O insurance coverage for a Delaware corporation, Delaware law applies."  Ex. D, 22 n.54; *see id.* at 14, 22, 31, 32 (repeatedly referencing "Delaware law").  On August 6, 2020, in accordance with a stipulation of the parties, the Delaware Superior Court (LeGrow, J.) entered an order consolidating the two coverage cases "for all purposes" due to "the common questions of law and fact, the similarity of the claims and defenses[,] and to avoid unnecessary costs or delay." Ex. E, at 3.  On August 17 and 19, 2020, National Union, ACE, and QBE answered Stillwater's complaint, and ACE and QBE asserted counterclaims seeking a declaration that their respective policies afford no coverage for losses arising from the Delaware Appraisal Action. Exs. F, G, H.  On September 14, 2020, Stillwater answered ACE and QBE's counterclaims.  Exs. I, J.

### D.   The Delaware Supreme Court's Decision in *In re Solera Insurance Coverage Appeals*

On June 25, 2020, the Delaware Superior Court issued an order staying all briefing on Stillwater's motion for judgment on the pleadings pending resolution of

a separate appeal then pending before the Delaware Supreme Court.  Ex. K.  In *In re Solera Insurance Coverage Appeals*, the Delaware Supreme Court was then reviewing a separate decision of the Delaware Superior Court that had held that an appraisal action under Delaware law constituted a Securities Claim under a directors-and-officers insurance policy with a Securities Claim definition nearly identical to the material portion of the definition in the National Union Policy here:

| *Solera* Policy | National Union Policy |
|---|---|
| • defining a Securities Claim as a Claim "for an[] actual or alleged violation of a[] statute, regulation, or rule or common law" | • defining a Securities Claim as a Claim "alleging a violation of any law, rule or regulation, whether statutory or common law" |

*Compare Solera Holdings, Inc. v. XL Specialty Ins. Co.*, 213 A.3d 1249, 1252 (Del. Super. Ct. 2019), *clarified*, 2019 WL 4120688 (Del. Super. Ct. Aug. 29, 2019), *and rev'd sub nom. In re Solera Ins. Coverage Appeals*, 240 A.3d 1121, 1256 (Del. 2020) *with* ECF No. 1-1, at 54.  The decision under review in *Solera* had been issued by Judge LeGrow, the same judge assigned to the consolidated Stillwater coverage cases.  *See Solera Holdings*, 213 A.3d at 1249.  Stillwater had relied on Judge LeGrow's *Solera* decision throughout its motion for judgment on the pleadings, and Stillwater's counsel also represented the insured in *Solera*.  *See In re Solera*, 240 A.3d at 1122 (listing counsel); Ex. D, at 1, 14-15, 18-19.

On October 23, 2020, the Delaware Supreme Court reversed in *Solera*, holding under Delaware law that a Delaware appraisal action is *not* a claim "for a *violation* of any law." *In re Solera*, 240 A.3d at 1131.  The court explained that "the term 'violation' suggests an element of wrongdoing," which Delaware appraisal actions lack.  *Id.* at 1132-33.  Historically, appraisal arose "as a means to compensate shareholders . . . for the loss of their common law right to prevent a merger or consolidation by refusal to consent," and "[a]s such, . . . there is one issue in an appraisal trial: the value of the dissenting stockholder's stock."  *Id.* at 1133 (cleaned up).  The text of § 262, moreover, imposes no obligation on a corporation to pay fair value in a merger, nor does it require a dissenting stockholder to allege a violation of any such obligation.  *See id.* at 1134.  The purpose of appraisal, accordingly, is "neutral in nature."  *Id.* at 1135.  And "there is an unbroken line of cases that hold that an appraisal under section 262 does not involve any inquiry into claims of wrongdoing."  *Id.* at 1136 (quotation marks omitted).

The clear import of *Solera* for Stillwater is that the Delaware Appraisal Action is not a Securities Claim.  Just as the appraisal action in *Solera* was not a claim "for any actual or alleged violation of any . . . statute, regulation, or rule or common law," *id.* at 1130, the Delaware Appraisal Action here is not a claim "alleging a violation of any law, rule or regulation, whether statutory or common law," ECF No. 1-1, at 54.  Therefore, because the National Union Policy covers Stillwater itself *only* for

11

losses arising from a Securities Claim, and the ACE and QBE Policies follow form to the National Union Policy, the Insurers' policies afford no coverage for Stillwater's defense costs and interest payments (or any other payments or losses) in connection with the Delaware Appraisal Action.

### E.    This Litigation

Rather than acknowledge that *Solera* fatally undermined its coverage demands, Stillwater sought to switch forums and change the governing law from Delaware to Montana.  On December 21, 2020, Stillwater filed a new complaint against the Insurers—as well as AIG Claims, Inc., a claims administrator that Stillwater had never previously sued—in the Twenty-Second Judicial District Court in Stillwater County, Montana.  ECF No. 1-4, at 5.  Despite Stillwater's previous assertions in the Delaware litigation that Delaware law governs its declaratory and contractual causes of action seeking coverage for Stillwater's defense costs and interest payments in connection with the Delaware Appraisal Action, Stillwater's complaint here reasserts declaratory and contractual causes of action against the same Insurers seeking coverage for the same defense costs and interest payments, but cites cases from Montana, not Delaware.  *See id.* at 15.  Stillwater also adds an additional cause of action seeking payment for Stillwater's defense costs and interest payments (as well as additional relief) under Montana's Unfair Trade Practices Act. *Id.* at 20.  On January 11, 2021, the Insurers removed the case from state court to

this Court, explaining that, although Stillwater and AIG Claims are both organized under Delaware law and therefore are citizens of Delaware, this Court possesses diversity jurisdiction under 28 U.S.C. § 1332 because AIG Claims was improperly joined.  ECF No. 1.

In the meantime, back in Delaware, on the same day it filed its complaint in Montana state court, Stillwater filed a motion in the already-pending consolidated coverage actions seeking either to voluntarily dismiss or, in the alternative, leave to file an amended complaint.  Ex. L.  Stillwater's only explanation for seeking to voluntarily dismiss was that its causes of action are now "specific to Montana law." *Id.* at 5.  Silently deleting its prior allegations that Delaware law applies, Stillwater's proposed amended complaint in the Delaware action is materially identical to its complaint in this action, except that the Delaware complaint does not purport to join AIG Claims as a defendant.  *Compare* Ex. M (Stillwater's proposed amended complaint) *with* ECF No. 1-4, at 5-24.  The Insurers' opposition to Stillwater's motion to dismiss or amend in the Delaware litigation is due on January 25, 2021.

## ARGUMENT

### I.     The Relevant Factors Strongly Favor Abstention under *Colorado River*

Under the Supreme Court's decision in *Colorado River*, "[i]n exceptional circumstances, a federal court may decline to exercise its 'virtually unflagging obligation' to exercise federal jurisdiction, in deference to pending, parallel state

13

proceedings." *Montanore Minerals Corp. v. Bakie*, 867 F.3d 1160, 1165 (9th Cir. 2017) (quoting *Colo. River*, 424 U.S. at 817).  Abstention under *Colorado River* "rest[s] on considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Colo. River*, 424 U.S. at 817.

"When a case proceeds on parallel tracks in state and federal court, the threat to efficient adjudication is self-evident.  But judicial economy is not the only value that is placed in jeopardy." *Lumen Constr., Inc. v. Brant Constr. Co. Inc.*, 780 F.2d 691, 694 (7th Cir. 1985).  In addition, "[t]he legitimacy of the court system in the eyes of the public and fairness to the individual litigants also are endangered by duplicative suits that are the product of gamesmanship." *Id.*  The Ninth Circuit accordingly has often affirmed district court decisions abstaining under *Colorado River* where a party "bec[a]me dissatisfied with the state court and now seeks a new forum for their claims." *Nakash v. Marciano*, 882 F.2d 1411, 1417 (9th Cir. 1989); *see Seneca Ins. Co., Inc. v. Strange Land, Inc.*, 862 F.3d 835, 846 (9th Cir. 2017) (citing cases).  Federal courts "have no interest in encouraging this practice." *Nakash*, 882 F.2d at 1417.  This Court in particular has previously abstained under *Colorado River* in order to avoid "wrongly reward[ing] … conduct" that "amounts to gamesmanship." *SSI Big Sky LLC v. Russell*, 2011 WL 13133968, at *3 (D. Mont. June 7, 2011).

In determining whether to abstain under *Colorado River*, courts in the Ninth Circuit consider eight factors:

> (1) which court first assumed jurisdiction over any property at stake;
>
> (2) the inconvenience of the federal forum;
>
> (3) the desire to avoid piecemeal litigation;
>
> (4) the order in which the forums obtained jurisdiction;
>
> (5) whether federal law or state law provides the rule of decision on the merits;
>
> (6) whether the state court proceedings can adequately protect the rights of the federal litigants;
>
> (7) the desire to avoid forum shopping; and
>
> (8) whether the state court proceedings will resolve all issues before the federal court.

*Montanore Minerals*, 867 F.3d at 1166. "Some factors may not apply in some cases, and any doubt as to whether a factor exists should be resolved against a stay or dismissal." *Id.* (cleaned up) (quoting *Seneca Ins. Co.*, 862 F.3d at 842)). Courts do not treat these factors as a "mechanical checklist," but rather apply "a careful balancing of the important factors as they apply in a given case." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983).

Here, the balance of relevant factors weighs decisively in favor of abstention. Most significantly, Stillwater is blatantly forum shopping, initiating piecemeal litigation with the obvious goal of evading a dispositive, on-point decision of the Delaware Supreme Court under Delaware law, which Stillwater in the past

repeatedly argued governs its demand for coverage.  This is the *third*-filed lawsuit between the parties regarding the same subject matter, and the two previously filed lawsuits, which have been consolidated and pending before the Delaware Superior Court for months, will fully resolve the parties' dispute.  Any further proceedings in this case would waste party and court resources, encourage gamesmanship, and diminish the legitimacy of the judicial system.

### A.   Stillwater Is Blatantly Forum Shopping

The "desire to avoid forum shopping," *Montanore Minerals*, 867 F.3d at 1166, overwhelmingly favors abstention in this case.  "When evaluating forum shopping under *Colorado River*, [courts] consider whether either party improperly sought more favorable rules in its choice of forum or pursued suit in a new forum after facing setbacks in the original proceeding."  *Seneca Ins.*, 862 F.3d at 846.  Courts in the Ninth Circuit accordingly have found forum shopping where a party "bec[a]me dissatisfied with the state court and now seeks a new forum for their claims," *Nakash*, 882 F.2d at 1417, or where a party "abandon[ed] its state court case solely because it believe[d] that the Federal Rules of Evidence [we]re more favorable to it than the state evidentiary rules," *Am. Int'l Underwriters (Philippines), Inc. v. Cont'l Ins. Co.*, 843 F.2d 1253, 1259 (9th Cir. 1988).  Courts have also found forum shopping where a party was "simply attempting to achieve his desired results through a different forum," *Bailey v. Mont. Dep't of Health & Human Servs.*, 2009

WL 330280, at *4 (D. Mont. Feb. 4, 2009), or where, "a few months after it received an unfavorable decision in state court," a party filed a new federal suit "aimed at the same goal" as the prior state suit, *Montanore Minerals*, 867 F.3d at 1169-70.

Stillwater's conduct here "epitomizes forum shopping." *Am. Int'l Underwriters*, 843 F.2d at 1259. After National Union filed a declaratory judgment action against Stillwater in Delaware, Stillwater followed suit, filing its own complaint against National Union, ACE, and QBE in the same court in Delaware. Apparently eager to rely on the Delaware Superior Court's (now-reversed) decision in *Solera* holding that Delaware appraisal actions constitute Securities Claims, Stillwater expressly alleged that "Delaware law applies." Ex. B, ¶ 19. Stillwater then moved for judgment on the pleadings, arguing repeatedly that "Delaware law" applies and that the Delaware Superior Court's decision in *Solera* controlled. Ex. D, at 1, 14-15, 18-19.

When the Delaware Supreme Court reversed in *Solera*, however, holding that Delaware appraisal actions are *not* Securities Claims because they do not involve "any *violation* of any law," *In re Solera*, 240 A.3d at 1131, Stillwater did a complete about-face. Less than two months after the Delaware Supreme Court's decision, Stillwater moved to voluntarily dismiss its complaint in Delaware and, on the same day, filed a complaint against the Insurers in Montana state court. Stillwater's new complaint here and its proposed amended complaint in Delaware make no mention

of the prior Delaware litigation and cite authority under Montana rather than Delaware law.  Stillwater's only explanation for its sudden about-face is that, directly contrary to its prior allegations and arguments to the Delaware Superior Court, Stillwater now wants to pursue "claims specific to Montana law."  Ex. L, at 5.

A more brazen example of forum shopping is difficult to imagine.  Having "become dissatisfied with the [Delaware] state court," *Nakash*, 882 F.2d at 1417, Stillwater is "simply attempting to achieve [its] desired results through a different forum," *Bailey*, 2009 WL 330280, at *1.  Just "a few months after it received an unfavorable decision in" *Solera*, Stillwater initiated this suit "aimed at the same goal" as the prior suit in Delaware, *Montanore Minerals*, 867 F.3d at 1169-70— obtaining insurance coverage for the Delaware Appraisal Action.  Stillwater plainly now "believes" that the relevant law in Montana is "more favorable to it than" the relevant law in Delaware.  *Am. Int'l Underwriters*, 843 F.2d at 1259.

It is no answer for Stillwater to contend that this case involves different parties or different causes of action from the consolidated Delaware actions.  The only party named here and not named in Delaware is AIG Claims, but as explained, AIG Claims was improperly joined here and thus is not a proper party to this case.  *See* ECF No. 1 at 2.  And Stillwater has moved for leave to amend its complaint in Delaware to assert essentially the same causes of action it is asserting here.  Regardless, the Ninth

Circuit has found improper forum shopping "even though additional parties were named in the state suit, the federal suit included additional claims, and the suits arguably focused on different aspects of the dispute." *Montanore Minerals*, 867 F.3d at 1170 (discussing *Nakash*, 882 F.2d at 1416-17). Notwithstanding any minor differences between this action and the ongoing consolidated Delaware actions, Stillwater is improperly engaging in gamesmanship and forum shopping.

## B. Abstention Will Avoid Piecemeal Litigation

The "desire to avoid piecemeal litigation," *id.* at 1160, also strongly favors abstention here. Piecemeal litigation occurs "when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Am. Int'l Underwriters*, 843 F.2d at 1258. To be sure, "[f]or this factor to favor a stay, the case must raise a special concern about piecemeal litigation, which can be remedied by staying or dismissing the federal proceeding, and which the court could not have avoided by other means." *Montanore Minerals*, 867 F.3d at 1167 (cleaned up). But courts in this district and in the Ninth Circuit more broadly have not hesitated to abstain under *Colorado River* based on concerns that "any further proceedings" in federal court "could potentially result in inappropriate piecemeal litigation." *Bailey*, 2009 WL 330280, at *4. Courts have relied on this factor to abstain where, for example, a party "deci[ded] to file two separate actions in two different courts" in pursuit of a "singular goal," *id.*, where "[t]he state court

consolidated multiple cases to create a comprehensive scheme for deciding" the parties' disputes, *R.R. St. & Co. Inc. v. Transp. Ins. Co.*, 656 F.3d 966, 979 (9th Cir. 2011), and where "two actions ask[ed] two different courts to determine the parties' rights under a contract," *SSI Big Sky LLC*, 2011 WL 13133968, at *3.

Here, piecemeal litigation is not just possible but inevitable. As in *SSI Big Sky LLC*, "two actions ask two different courts to determine the parties' rights under a contract," *id.*—namely, the National Union Policy. And Stillwater has not only "file[d] two separate actions in two different courts" with the same "goal," *Montamore Minerals*, 867 F.3d at 1167, but has asserted materially identical causes of action in both cases. Months ago, moreover—and with Stillwater's consent—the Delaware Superior Court established a "comprehensive scheme for deciding" the parties' disputes, *R.R. St.*, 656 F.3d at 979, by consolidating Stillwater's own Delaware coverage suit with National Union's declaratory judgment suit "to avoid unnecessary costs or delay," Ex. E, at 3. Furthermore, the court then stayed the consolidated cases to await the Delaware Supreme Court's decision in *Solera*, recognizing that *Solera* would dispose of Stillwater's coverage demands in their entirety if decided in the Insurers' favor, which it then was.

Nor is there any substantial possibility that the Delaware Superior Court will dismiss the consolidated Delaware actions, leaving this as the only relevant pending litigation. Under Delaware law, the Delaware Superior Court may decline to allow

20

voluntary dismissal if the plaintiff provides an "insufficient explanation for the need to take a dismissal," and forum shopping is *not* a sufficient explanation. *AT&T Wireless Servs., Inc. v. Fed. Ins. Co.*, 2005 WL 2155695, at *3, 5 (Del. Super. Ct. Aug. 18, 2005). Regardless, the Delaware Superior Court lacks authority to allow voluntary dismissal of National Union's claims and ACE and QBE's counterclaims over the Insurers' objections. *See id.*; Del. Super. Ct. Rule 41(a)(2). In short, the *only* way for this Court to avoid "duplicating efforts and possibly reaching different results," *Am. Int'l Underwriters*, 843 F.2d at 1258, is to abstain.

### C.   The Delaware Superior Court Obtained Jurisdiction First

The "order in which the forums obtained jurisdiction," *Montanore Minerals*, 867 F.3d at 1160, also strongly favors abstention here. The Delaware Superior Court obtained jurisdiction over National Union's declaratory suit and Stillwater's follow-on suit in April 2020, roughly nine months ago, while this Court obtained jurisdiction over this suit just last week. This case accordingly is not the first- or even the second-filed case regarding the same subject matter, but rather the *third*.

In addition to the strict filing order, courts evaluating this factor also consider "the realities of the case at hand in a pragmatic, flexible manner," including "the relative progress of the state and federal proceedings." *Id.* at 1168 (quotation marks omitted). Here, as explained, the Delaware Superior Court has issued multiple procedural orders carefully positioning itself to fully and efficiently adjudicate the

parties' disputes and, in the aftermath of the Delaware Supreme Court's decision in *Solera*, is now ready to do so.  It is the Delaware Superior Court, not this Court, moreover, to which Stillwater previously made repeated statements expressly alleging and arguing that Delaware law applies, not Montana law.  The Delaware Superior Court also stands better situated than this Court to resolve any dispute about the meaning or effect of the Delaware Supreme Court's decision in *Solera*.  Indeed, Judge LeGrow in particular is especially well situated to resolve any such dispute because Judge LeGrow issued the underlying decision in *Solera* that the Delaware Supreme Court later reversed.  This case, by contrast, "has not proceeded past the filing of the Complaint" and notice of removal.  *SSI Big Sky LLC*, 2011 WL 13133968, at *3.

**D.     The Delaware Litigation Will Resolve All Issues in This Action**

"[W]hether the state court proceedings will resolve all issues before the federal court," *Montanore Minerals*, 867 F.3d at 1160, also counsels in favor of abstention.  This factor focuses on "whether the state court proceeding sufficiently parallels the federal proceeding in order to ensure comprehensive disposition of litigation."  *Id.* at 1170 (quotation marks omitted).  Courts "do not require exact parallelism under this factor; it is sufficient if the proceedings are substantially similar."  *Id.* (quotation marks omitted).  Two suits are "sufficiently parallel" so long as they "concern[] the same relevant conduct and name[] the same pertinent

parties"—even if one suit names "additional parties" or includes "additional claims," and even if "the suits arguably focus[] on different aspects of the dispute." *Id.*

Here, this action and the consolidated Delaware actions are more than "substantially similar." Indeed, while exact parallelism is not required, the two litigations are essentially exactly parallel. Both litigations involve Stillwater, National Union, ACE, and QBE, and Stillwater's complaint here is materially identical to the amended complaint it has sought leave to file in Delaware. At most, AIG Claims is named in this case but not in Delaware, but again, AIG Claims was improperly joined here, and regardless, such a minor difference between the two suits does not render them non-parallel. "This federal action is a substantially similar 'spin-off' of the state action, and as such it meets the parallel proceedings requirement." *SSI Big Sky LLC*, 2011 WL 13133968, at *2.

### E. Montana Is an Inconvenient Forum

The "inconvenience of the federal forum," *Montanore Minerals*, 867 F.3d at 1160, also supports abstention here. Stillwater is organized under Delaware law, *see* ECF No. 1-4, at 6, and Stillwater voluntarily chose to file suit in Delaware Superior Court, where the parties have been litigating for the better part of a year. The Delaware Superior Court is located more than 2,000 miles from this Court's seat in Billings, Montana. That distance dwarfs the 300-mile distance between the state and

federal courts in *Colorado River* itself, which the Supreme Court held weighed in favor of abstention there.  *See* 424 U.S. at 820.

## F.     The Remaining Factors Do Not Weigh Against Abstention

The remaining two factors that are relevant to this case—"whether federal law or state law provides the rule of decision on the merits," and "whether the state court proceedings can adequately protect the rights of the federal litigants," *Montanore Minerals*, 867 F.3d at 1160—also weigh in favor of abstention or, at a minimum, do not weigh against it.

As to whether the governing law is state or federal, Stillwater previously alleged and argued that "Delaware law applies" and that "Delaware has a strong state interest in the application of its principles of corporate law and governance . . . in this matter."  Ex. B, ¶ 19.  This case involves insurance provided to a Delaware corporation, under a policy with an alternative dispute resolution provision referencing Delaware law; it also concerns an underlying lawsuit brought in Delaware court under Delaware law.  In its complaint here and proposed amended complaint in Delaware, however, Stillwater now alleges that Montana law applies.  But either way, there is no dispute that state law governs, not federal law.  That said, the Ninth Circuit has held that the applicable law "is more important when it weighs in favor of federal jurisdiction" and, absent "rare circumstances," is "of little or no weight" if state law applies, as is the case here. *Travelers Indem. Co. v. Madonna*,

914 F.2d 1364, 1370 (9th Cir. 1990) (citation omitted); *see R.R. Street*, 656 F.3d at 981 (similar).

Similarly, the Delaware Superior Court is fully capable of protecting the rights of all parties to this case. But again, the Ninth Circuit has held that "this factor, like choice of law, is more important when it weighs in favor of federal jurisdiction." *Travelers*, 914 F.2d at 1370 (citation omitted). This factor accordingly is "unhelpful" and of little import here. *Id.*[3]

## II. The Proper Remedy Is a Stay of All Proceedings Pending Resolution of the Delaware Litigation

Where abstention is appropriate under *Colorado River*, a federal court may stay the federal case pending resolution of the parallel state litigation, or may dismiss the federal case without prejudice. *See, e.g.*, *Bailey*, 2009 WL 330280, at *5. Ninth Circuit precedent, however, generally prefers stays over dismissals, since a stay "ensures that the federal forum will remain open if for some unexpected reason the state forum . . . turn[s] out to be inadequate." *Attwood v. Mendocino Coast Dist. Hosp.*, 886 F.2d 241, 243 (9th Cir. 1989) (quotation marks omitted). In this case, a stay would allow the parties to return to this Court and litigate their disputes here if, for example, the Delaware Superior Court were (against all odds) to grant

---

[3] The final *Colorado River* factor—"which court first assumed jurisdiction over any property at stake," *Montanore Minerals*, 867 F.3d at 1160—is not relevant here. This factor applies only in cases brought *in rem* or *quasi in rem*, *see id.* at 1167-68, which this case was not.

Stillwater's pending motion to voluntarily dismiss and terminate the Delaware litigation in its entirety without reaching the merits.  The proper remedy accordingly is a stay.

## CONCLUSION

For the foregoing reasons, Defendants' Motion To Stay should be granted, and the Court should enter a stay of all proceedings in this case pending resolution of the ongoing parallel litigation in the Delaware Superior Court.

DATED this 22nd day of January, 2021.

MATOVICH, KELLER & HUSO, P.C.

By:  /s/ Katherine S. Huso
      Carey E. Matovich
      Katherine S. Huso
      *Attorneys for National Union, QBE*

DATED this 22nd day of January, 2021.

BERG LILLY, P.C.

By:  /s/ Elizabeth W. Lund
      Elizabeth W. Lund
      *Attorney for ACE American*

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief complies with the word length limits of Local Rule 7.1(d)(2), United States District Court for the District of Montana, and contains 6,192 words according to the word count function of Microsoft Office, excluding the caption, certificate of compliance, table of contents and authorities, exhibit index, and certificate of service.

DATED this 22nd day of January, 2021.

MATOVICH, KELLER & HUSO, P.C.

By:   /s/ Katherine S. Huso
        Carey E. Matovich
        Katherine S. Huso
        *Attorneys for National Union, QBE*

DATED this 22nd day of January, 2021.

BERG LILLY, P.C.

By:   /s/ Elizabeth W. Lund
        Elizabeth W. Lund
        *Attorney for ACE American*

27

## __CERTIFICATE OF SERVICE__

I hereby certify that on this 22nd day of January, 2021, a copy of the foregoing was served on the following persons by the following means:

| 1, 2, 3 | CM/ECF | | Fax |
|---|---|---|---|
| | Hand Delivery | | Email |
| | Mail | | Overnight Delivery Service |

1.  Clerk, U.S. District Court, Billings Division

2.  Martha Sheehy
    SHEEHY LAW FIRM
    P.O. Box 584
    Billings, MT 59103-0584
        ATTORNEY FOR PLAINTIFF

3.  Kyle A. Gray
    HOLLAND & HART, LLP
    401 N. 31st Street, Suite 1500
    Billings, MT 59101
        ATTORNEY FOR PLAINTIFF

MATOVICH, KELLER & HUSO, P.C.

By: /s/ Katherine S. Huso
    Carey E. Matovich
    Katherine S. Huso
    *Attorneys for National Union, QBE*

28