Martha Sheehy
SHEEHY LAW FIRM
P. O. Box 584
Billings, Montana 59103-0584
Telephone: (406) 252-2004
Fax: (866) 477-5953
msheehy@sheehylawfirm.com

Kyle A. Gray
HOLLAND & HART LLP
401 N. 31st St., Suite 1500
Billings MT 59101
Telephone:  406-252-2166
kgray@hollandhart.com

  Attorneys for Plaintiff
  Stillwater Mining Company

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| STILLWATER MINING COMPANY,<br><br>  Plaintiff,<br><br>    -vs-<br><br>AIG CLAIMS, INC; NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA; ACE AMERICAN INSURANCE COMPANY; AND QBE INSURANCE CORPORATION,<br><br>  Defendants. | Cause CV-21-04-BLG-SPW-TWC<br><br>**PLAINTIFF STILLWATER MINING COMPANY'S BRIEF IN SUPPORT OF MOTION FOR REMAND REPLYING JOINTLY TO SEPARATE BRIEFS OF DEFENDANT ACE AND OF DEFENDANT NATIONAL UNION, ET. AL.** |

# INTRODUCTION

Defendants improperly removed this state law action to federal court based on a single argument: purported fraudulent joinder of AIG Claims, Inc. ("AIG"). In their separate briefs, all four Defendants have failed to refute controlling precedent establishing that Plaintiff Stillwater Mining Company ("Stillwater") has pled a viable claim against the claims-handler, AIG. *Hochhalter Inc. v. Diamond State Ins. Co.,* 2017 WL 5710461 (D. Mont. Nov. 8, 2017), *citing O'Fallon v. Farmers Ins. Exchange,* 859 P.2d 1008, 1015 (Mont. 1993). Given Stillwater's viable *O'Fallon* claim, AIG is not a sham defendant, and the case must be remanded to state court because diversity is not complete. *Id.*

# ARGUMENT

## I. DEFENDANTS FAILED TO MEET THEIR "HEAVY BURDEN" OF ESTABLISHING AIG IS A SHAM DEFENDANT.

### A. Stillwater Pled a Viable Claim Against AIG.

Defendants bear the "heavy burden" of establishing by clear and convincing evidence that AIG "cannot be liable on any theory." *Grancare, LLC v. Thrower by and through Mills*, 889 F.3d 543, 548 (9th Cir. 2018). All four Defendants virtually ignore the unassailable precedent establishing that a claimant may assert a claim under the Unfair Trade Practices Act ("UTPA") against an adjuster that has "engage[d] in the unfair trade practices set forth in the [UTPA]." *O'Fallon,* 859

1

P.2d at 1015.  Stillwater pled just such an "*O'Fallon* claim" against AIG for engaging in a series of actions, when adjusting the Stillwater claims, prohibited by the UTPA.  (Complaint, Dkt. 14-1, ¶¶80-88).

Based on this controlling Montana Supreme Court precedent, numerous decisions of this Court establish that Stillwater's claim against AIG is viable and, thus, deprives the Court of jurisdiction.  *See Hochhalter, supra*; *Soanes v. Carolina Cas. Ins. Co.,* 2010 WL 5607045 (D. Mont. Nov. 10, 2010); *Leaphart v. National Union Fire Ins. Co. of Pittsburg, PA,* 2016 WL 81234,\*\*2-3 (D. Mont. Jan. 7, 2016).  Defendants posit two faulty arguments, addressed in sections B and C, which presume this Court will ignore *O'Fallon*.  *Hochhalter* proves the contrary.  As there, the inquiry here must end with *O'Fallon*.  This Court need not, and should not, go any further than confirming Defendants have failed to meet their heavy burden of proving that Plaintiff failed to plead a viable *O'Fallon* claim against AIG.

### B.  Stillwater Alleges Acts Which Constitute a Viable UTPA-Based Claim Against AIG.

Should the Court look further, it will see Defendants allege "Stillwater does not plausibly allege any act by AIG Claims which the UTPA prohibits. . . ."  (Dkt.

2

21, p. 20).[1]  Just the opposite is true.  Stillwater alleges AIG violated numerous subsections of the UTPA, § 33-18-201(1), (2), (3), (4), (5), (7).  Based on conduct and inactions described, *inter alia*, in ¶¶33-51, the Defendants, including AIG:

- "failed to act reasonably promptly upon communication with respect to claims arising under their insurance policies." (Dkt. 14-1, ¶81).

- "failed to affirm or deny coverage within a reasonable time." (*Id*., ¶82).

- "compelled Stillwater to participate in litigation to recover amounts due under their insurance policies." (*Id*., ¶83).

- "misrepresented pertinent facts or insurance policy provisions relating to coverages at issue." (*Id*., ¶84).

- "failed to conduct a reasonable investigation of its Policy." (*Id*., ¶85).

- "failed to adopt and implement reasonable standards for the prompt investigation of claims arising under their insurance policies." (*Id*., ¶86).

Clearly, Stillwater met the notice pleading requirements of a "short and plain statement of the claim showing that the pleader is entitled to relief."  Rule 8(a), M.R.Civ.P.  Allegations just like Stillwater's have been deemed viable against an adjuster by this Court on numerous occasions.  *See Hochhalter, Soanes, Leaphart*.

---

[1] In invoking this Rule 12(b)(6) "plausibility" standard, Defendants impermissibly "conflate[] a jurisdictional inquiry with an adjudication on the merits." *Grancare,* 889 F.3d at 549.  The Rule 12(b)(1) "wholly insubstantial and frivolous" standard for dismissing claims applies here.  *Id.*

As such, AIG is *not* fraudulently joined because Stillwater pled a viable *O'Fallon* claim alleging acts by AIG, done with frequency, that the UTPA prohibits. Case closed – remand is required.

### C. Stillwater Properly Pled its UTPA Claims to Include AIG's General Business Practices.

Defendants next assert, incorrectly, that "Stillwater does not allege at all, plausibly or otherwise, that AIG Claims performed any prohibited act 'with such frequency as to indicate a general business practice.'" (Dkt. 21, p.21). But "[v]iolations indicating a general business practice can be established by showing that multiple violations occurred in one claim or that multiple violations occurred by the same company in different cases." *Burnett v. PacificSource Health Plans*, 2019 WL 4016604,*2 (D. Mont. 2019, slip op.), *citing Leaphart*, 2016 WL 81234, *2; *Cook v. Principal Mut. Life Ins.*, 784 F.Supp. 1513, 1518 (D. Mont. 1990).

In the Complaint, Stillwater specifically alleges that "in engaging in the foregoing acts" – *e.g.*, not providing a promised written disclaimer, stalling for over two years, etc. – "Defendants have violated the UTPA, § 33-18-201, MCA." This allegation incorporated the statute by reference, including its "frequency of practice" language. (Dkt. 14-1, ¶87). As shown above, Stillwater further alleges AIG violated the UTPA in at least six different ways at six different junctures in

4

this single claim. (Dkt. 14-1, ¶¶81-86). Each allegation is temporally disparate. For example, Stillwater alleges Defendants failed to adopt reasonable standards for handling the claim <u>prior</u> to the Stillwater claim; failed to act promptly <u>upon receipt</u> of the claim; failed to investigate <u>during the multi-year claim process</u>; and forced Stillwater into litigation <u>years later</u>. Stillwater has, thus, alleged *frequent* UTPA violations by AIG.

In addition, in the exact circumstance of this case, Montana law is clear that Stillwater *need not* specifically plead frequency of practice because repeated practice "could reasonably be inferred as to a corporation in the business of insurance or claims adjusting," a corporation like *AIG Claims*. *Burnett*,*2; *Soanes*. Again, because Stillwater's *O'Fallon* claim against AIG is plainly viable, AIG was not fraudulently joined.

**D.   The Alleged Pleading "Deficiencies" Do Not Justify Dismissal of AIG.**

Even if a party cannot withstand a Rule 12(b)(6) motion, the remand inquiry does not end. In the Ninth Circuit, "the district court must consider . . . whether a deficiency in the complaint can possibly be cured by granting the plaintiff leave to amend." *Grancare*, 889 F.3d at 550. Defendants have not established the picayune defects they allege could not be cured by granting Stillwater leave to

5

amend.  Plainly, they could be.  As such, this Court can go no further but must promptly remand this case to state court.  *Grancare*, 889 F.3d at 548.

## II.   DEFENDANTS' CHOICE-OF-LAW ARGUMENT DOES NOT CREATE DIVERSITY JURISDICTION WHERE NONE EXISTS.

Now we come to Defendants' real arguments.  They ask this Court to take two extraordinary steps *before* they have established federal subject matter exists: (1) determine that Delaware law applies; and (2) apply Delaware law to determine that no cause of action exists against AIG.  This Court lacks jurisdiction to make these determinations.  Even could the Court so act, Defendants failed to meet their "heavy burden" to support their extraordinary requests.

### A.   Defendants Improperly Seek Substantive Rulings at a Threshold Jurisdictional Stage.

Since 1804, the Supreme Court has required that "jurisdiction be established as a threshold matter," a rule that is "inflexible and without exception."  *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 95 (1998).  Thus, federal courts must first determine the existence of diversity jurisdiction before deciding substantive questions, including choice-of-law.  This is particularly so in a "fraudulent joinder" situation because a choice-of-law determination requires a complex analysis "necessarily driven by the unique facts [and] issues" of a given dispute that will simply not be before the court so early.  *Buckles v. BH Flowtest,*

*Inc.,* 476 P.2d 422, 424-25 (Mont. 2020). In *Abels v. State Farm Fire & Casualty Co.*, 770 F.2d 26, 33, n. 10 (3d Cir. 1985), the Third Circuit explained: "A federal court cannot engage in a choice of law analysis where diversity jurisdiction is not first established."

While the Ninth Circuit has not directly addressed the issue, district courts within this Circuit agree with the Third Circuit that when "assessing the viability of state law claims at the fraudulent joiner state," it would be an improper inquiry into the merits for the court to "engage in a choice of law analysis and [the court] should instead apply the body of law suggested by the plaintiff, so long as that choice of law is itself colorable." *Balberdi v. Lewis*, 2013 WL 1296286,*3 (D. Haw. March 8, 2013). *See also Silas v. Dignity Health,* 2020 WL 7056289,*2 (C.D. Cal., Dec. 12, 2020)("Court declines to engage in a complicated choice-of-law analysis at [fraudulent joinder] stage").

"Jurisdiction is power to declare the law," and "without jurisdiction the court cannot proceed at all in any cause." *Steel*, 523 U.S. at 94. Here, because the insurance policy in dispute was issued *in Montana* to a *Montana-based* company, Stillwater's reliance on *Montana* law is, *per force*, colorable. This Court should go no further. *Abels*, n.10; *Silas,*\*2. Remand is required.

7

### B. Defendants Have Not Met Their Burden of Establishing Stillwater Has No Colorable Basis for Invoking Montana Law.

This Court should not engage Defendants' complex choice-of-law argument. If it does, the sole question is whether Defendants established there is no "colorable basis" for the application of Montana law. *Abels*, 770 F.2d at 26, n. 10; *Balberdi*, 2013 WL 1296286, *3. They did not.

#### 1. *O'Fallon* Claims Sound in Tort, not Contract.

Defendants first ask the Court to apply Delaware law under a "place of performance" analysis of what they argue is a contract cause of action. (Dkt. 21, pp.19-22). They are wrong. Defendants acknowledge this Court must apply Montana law to any conflict-of-laws analysis. (Dkt. 21, p.13). They then incorrectly rely on First Circuit authority, and announce that "Stillwater's UTPA count is a paradigmatic 'embroidered' contract cause of action." (Brief, Dkt. 21, p.17). This conclusion conflicts with Montana law. *O'Fallon* claims sound in tort, not contract. *Brewington v. Employers Fire Ins. Co.*, 992 P.2d 237, 241 (1999) (describing *O'Fallon* claims as "the common law tort of bad faith"); *White v. State ex rel. Montana State Fund*, 305 P.3d 795, 801 (2013)(calling *O'Fallon* claim "an

actionable tort").[2]  The "embroidered contract cause of action" may exist in the First Circuit, but in Montana, Defendants manufactured it out of whole – and unembroidered – cloth.

### 2. In Any Event, Montana Has the Most Significant Relationship to Stillwater's *O'Fallon* Tort Claims.

Defendants concede that *tort* claims are subject to the law of the state that has the most significant relationship to the particular issue before the court.  (Dkt. 21, p. 22).  Defendants argue Delaware has the most significant relationship because Stillwater's injuries occurred in Delaware where the appraisal action was litigated.  *Id.*  But that is plainly wrong.  Stillwater's injuries caused by AIG's mishandling of Stillwater's claims occurred *in Montana*, where Stillwater conducts its mining business, prepared and sent its demand letter, and received the letter denying its demands and otherwise violating the UTPA.  (Dkt. 21-3, 21-4).

Moreover, place of injury is only the first of four factors to be assessed in determining which law applies to a tort claim.  *Buckles*, 476 P.3d at 425.  The second, "place where the conduct causing the injury occurred," is New York, where AIG made its claims-handling decisions.  *Id.*  *See* Dkt. 21-4.  The third

---

[2] ACE makes this same mistake, arguing Stillwater is not "in privity of contract" with AIG, a concept that has no applicability to Stillwater's UTPA-based tort claims.  *See* Dkt. 20, p.4.

factor – places of incorporation and business of AIG and Stillwater, are Montana, New York and Delaware.  And the fourth, place where the relationship between the parties "is centered" is clearly Montana, where the policy was issued and the demands under it were made.  Thus, applying these four controlling tort-claim factors, Delaware is only a bit player, not a significant one.

Equally important, the Policy itself is not silent as to what law applies to the claims-handling responsibilities National Union delegated to AIG.  It provides the insurer will conform to Montana statutory law like the UTPA:

> **CONFORMITY WITH MONTANA STATUTES**
>
> The Provisions of this policy conform to the minimum requirements of Montana law and control over any conflicting statutes of any state in which the Insured resides on or after the effective date of this policy.

(Policy, Ex. 1, Endorsement 3).[3]

The Montana Supreme Court has recognized the applicability of such a conformity clause when a UTPA claim is pled.  *See Peris v. Safeco Ins. Co.*, 916 P.2d 780, 784 (Mont. 1996)(because policy said its terms "conformed" to Montana statutes, UTPA held to "clearly override[]" contrary policy clause).  AIG

---

[3] The parties further agreed Montana law applies to billing and practice rules.  (Ex. 1, Endorsement 1).

improperly ignores this mandated, contracted-for relationship of its claims-handling conduct with Montana, not Delaware, law.

Additionally, with respect to the "particular issue" here, Montana statutory and case law overwhelmingly demonstrate Montana's strong interest in protecting the defense and claims-handling rights of Montana-based insureds, centering the relationship between any adjuster of a Montana-issued policy with the insured *in Montana*. *See, e.g., Buckles* at 426 (explaining parties' relationship was centered in Montana where they were subject to "a Montana contract").

The UTPA provides strict minimum standards governing an insurer's claims-handling practices. § 33-18-201, *et seq.* The Montana Insurance Code requires insurers that provide policies in Montana to conform to the UTPA. § 33-23-103, MCA; *Peris,* 916 P.2d at 784. For decades, the Montana Supreme Court has emphatically confirmed Montana's stringent protection of the duty to defend, stating: "Unless there exists an unequivocal demonstration that the claim against an insured does not fall within the insurance policy's coverage, an insurer has a duty to defend." *Staples v. Farmers Union Mut. Ins. Co.,* 90 P.3d 381, 386 (Mont. 2004). This "unequivocal demonstration standard" is unique to Montana law and is "absolute." *Draggin' Y Cattle Co., Inc. v. Junkermeir, Clark Campanella, Stevens, P.C.* 439 P.3d 935, 943 (Mont. 2019).

11

Far from establishing that Delaware has the most significant relationship to the issue of claims-handling and defense, Defendants have established that Delaware has *no* relationship to that issue.  They claim that no Delaware law or statute would provide protection for Stillwater with respect to claims-handling or duty-to-defend allegations.  (Dkt. 21, p.23).  To the contrary, Montana's statutes, case law and the Policy itself demonstrate that Montana has the most significant relationship to the issues of claims-handling and defense.  At the very least, then, Stillwater has a colorable basis to invoke Montana law in its claims against AIG.  That being the case, this Court must reject Defendants' Delaware law-based arguments and remand this case to Montana state court.

### 3. Likewise, Montana Would Be the Place of Performance.

Defendants spend most of their argument asserting Delaware is the "place of performance" of the contract.  (Dkt. 21, pp. 18-22).  Since Stillwater's *O'Fallon* claim sounds in tort, this argument is misplaced.  Moreover, even could Defendants somehow rely on an inapplicable contract claim test, it too, favors Montana.

Defendants argue the place of performance is Delaware, the location of the Appraisal Action.  (Dkt. 21, pp.19-20).  But Stillwater does not assert a garden-variety coverage action here, merely seeking indemnity for judgment.  Instead, as

12

shown above, Stillwater brings claims for breach of the duty to defend and violations by AIG (a claims-handling company that adjusted a Montana-issued policy) of the minimum standards for claims-handling codified in the UTPA.

It is undisputed that the claims-handling decisions were communicated to Stillwater representatives *in Columbus, Montana.* (Dkt. 21-4). AIG, thus, has already conceded Montana is the place where Stillwater was "entitled to receive benefits" if AIG had not denied Stillwater's claim. *Mitchell v. State Farm Ins. Co.,* 68 P.3d 703, 708-09 (Mont. 2003). That makes Montana "the place of performance" under the policy. *Id.* Here again, remand is required because Defendants failed to establish Stillwater has no colorable basis to rely on Montana law for its claims against AIG, even if those claims sounded in contract (which they do not).

    **C.**    **Defendants Have Not Established that if Delaware Law Applies, Stillwater Has No Cause of Action Against AIG.**

Defendants' arguments rest on the faulty and unsubstantiated premise that if Delaware law applies, Stillwater has no cause of action against AIG. (Dkt. 21, p.18; Dkt. 20, pp.5-7). Again, this is a substantive issue this Court has no jurisdiction to decide. Moreover, the fact that Stillwater invoked Montana law does not refute the existence of claims-handling-based causes of action under

13

Delaware law.  Defendants again ignore the legal tenet that if Delaware law did apply, Stillwater would have the opportunity to amend its pleadings to cure the defect.  *Grancare*, 889 F.3d at 550.

Finally, Defendants claim AIG "cannot be liable under Delaware or Montana law because *Solera Holdings, Inc. v. XL Specialty Ins. Co.*, 213 A.3d 1249 (Dl. Super. Ct. 2019) precludes coverage."  (Dkt. 21, p.23; Dkt. 20, pp.5-8).  *Solera* only addresses whether *indemnity coverage* existed for an appraisal action involving *a different policy* and *different parties*.  Even if *Solera* applied to the Delaware Appraisal Action, it does not address, and certainly does not eliminate, the claims asserted by Stillwater here – breach of the duty to defend and violation of the UTPA.  Under controlling Montana law, the court in this action will not even consider whether coverage existed under *Solera* or any other case in ascertaining whether Defendants breached their duties to defend Stillwater.  The court must instead determine whether the insurers owed a duty to defend, *regardless* of the eventual coverage determination.  *Tidyman's Management Services Inc. v. Davis*, 330 P.3d 1139, 1151 (Mont. 2014).

The Montana Supreme Court rejects the notion that a finding of no indemnity coverage defeats an insured's claim for breach of the duty to defend.  To do so would "provid[e] insurers with an avenue to circumvent the clear

14

requirement imposed by our precedent that where the insurer believes a policy exclusion applies, it should defend under a reservation of rights and seek a determination of coverage through a declaratory judgment action." *Id.*[4] *See also Jarvis v. Allstate Ins. Co.,* 2012 WL 6152443 (D. Mont., Dec. 11, 2012 )(rejecting insurer's argument that resolution of contract coverage claim in its favor "would render moot a claim for unfair trade practices under Montana's UTPA").

Defendants did not defend Stillwater. Regardless of *Solera's* disputed effect on indemnity coverage, *Solera* is, thus, not dispositive of Stillwater's duty to defend and UTPA claims. Once again, if the Court reaches this argument, it must reject it and remand instead.

## III.   MOTIVE MUST BE DISREGARDED.

Plaintiff's motive in naming a defendant "does not affect the right to remove." *Chicago, R.I. &P Ry. Co. v. Schwyhart*, 227 U.S. 184, 193 (1913). Nevertheless, Defendants attempt to discredit Stillwater on "forum shopping" allegations. This Court should not consider motive, but should know that National Union raced to the courthouse in Delaware, where it filed a declaratory action instead of more properly waiting for its insured to file its affirmative claims in the

---

[4] ACE's reliance on stale federal authority contrary to this current and controlling Montana Supreme Court precedent is unavailing. (Dkt. 20, p.7).

forum of its choice.  (Dkt. 21, p.13).   The Montana Supreme Court considers such conduct to be "a paradigmatic example" of "an act of forum shopping" by an insurer.  *Wamsley v. Nodak Mut. Ins. Co.*, 178 P.3d 102, 476 (Mont. 2008).

## CONCLUSION

Defendants utterly failed to meet their "heavy burden" of establishing by clear and convincing evidence that AIG is a sham defendant.  Remand is required.  Defendants substantive arguments regarding choice-of-law, etc., are properly for decision by the Montana state court, not by this Court of limited jurisdiction.

Dated this 12th day of March, 2021.

    SHEEHY LAW FIRM

    By: */s/ Martha Sheehy*

    HOLLAND & HART LLP

    By: */s/ Kyle A. Gray*

    *Attorneys for Plaintiff Stillwater Mining Company*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d)(2)(A), this Brief is printed with proportionately-spaced Times New Roman text typeface of 14 points; is double-spaced; and the document (exclusive of tables and certificates) contains 3,242 words, calculated by MicrosoftWord.  This brief complies with the word limit provided of 3,250 words for reply briefs in Local Rule 7.1(d)(2).

By: */s/ Martha Sheehy*

16378522_v1